Ex Parte MRS. HAROLD T. WOLFENDEN and HAROLD T. WOLFENDEN.—348 S. W. (2d) 751.

Middle Section at Nashville.   April 7, 1961.

Certiorari Denied by Supreme Court July 26, 1961.

434

Grissim & Cosner, Nashville, for plaintiff in error.

Elvin Woodroof, Nashville, for defendant in error.

I

SHRIVER, J.  While this case is styled Mrs. Harold T. Wolfenden and Harold T. Wolfenden Ex Parte, it is, in fact, a contest over the adoption of Beverly Ann

Wolfenden, daughter of Harold T. Wolfenden and his then wife, Elsie Ballard Wolfenden, who died on the 27th day of October 1948 just two days after the birth of Beverly Ann.

In 1952, about three and one half years after the birth of his daughter Beverly Ann, Harold T. Wolfenden married the complainant, Mrs. Harold T. (Cora Catherine) Wolfenden, who then filed a petition to adopt the child. Thereupon, an answer and cross bill was filed by Robert C. Wolfenden and wife Annabelle, brother and sister-in-law, respectively, of Harold T. Wolfenden, seeking to adopt Beverly Ann who had lived in their home since the death of the child's mother in 1948.

The contest was heard in the Fourth Circuit Court of Davidson County, before the Honorable Benson Trimble, Judge, etc., and resulted in a decree dismissing the adoption petition of the stepmother which was joined in by her husband, father of the child, and a decree was entered sustaining the cross-petition of Robert C. Wolfenden and wife, Annabelle, to adopt the child.

On appeal to this Court it was held at a prior term, in an opinion by Judge Humphreys, that an essential element of jurisdiction was lacking in that there was no consent and no surrender by the natural father and there was no decree of abandonment entered in the trial Court. We held that, under these circumstances, jurisdiction to adopt was lacking, hence the case was remanded for the trial Court to pass on the question of abandonment. A petition for certiorari was filed in and denied by the Supreme Court.

On remand to the trial Court the following memorandum opinion was filed by the trial Judge:

"This cause comes on for further hearing upon remand from the Court of Appeals of the State of Tennessee, the opinion filed by said Court, and the entire record in this cause. From all of which the Court is of the opinion and finds as follows:

"That the natural father of the minor child involved in this cause, Harold T. Wolfenden, did abandon said child between its birth and the date this cause was originally heard in this Court. The attorney representing the original Defendants in the case at bar will prepare all necessary orders.

"This September 30, 1960.

"/s/  Benson Trimble

"Benson Trimble
"Judge"

A decree was, accordingly, entered and the cause was again appealed to this Court for determination.

## II

The appellants assigned numerous errors which it will not be necessary to consider separately. They took the position when the cause was here previously that, in the absence of finding of abandonment or consent on the part of the natural parent the Court had no jurisdiction to grant adoption over the protest of the natural parent to another, particularly, where such natural parent, as in this case, is shown to be entirely fit both morally and otherwise to have the child.

It is the position of the appellants (the father and stepmother) that the record shows (1) that the parent has not surrendered the child; (2) that the parent has

not consented to the adoption; (3) that the parent has not abandoned the child; and (4) that the parent is entirely fit, morally and otherwise to have custody of his own child and that, therefore, the trial Court was in error in dismissing the petition of Mrs. Harold T. Wolfenden, the stepmother, and in sustaining the petition of Robert C. Wolfenden and wife.

## III

As hereinabove stated, Beverly Ann Wolfenden was born the 25th day of October 1948. Her mother, Elsie Ballard Wolfenden, died two days later of complications incident to the child's birth.

The father, Harold T. Wolfenden, upon this sudden and unexpected event, approached his brother, Robert, and his wife, about helping him take care of the infant. After some discussion, it was agreed that they would do so and they then moved into the home of Harold where they stayed for approximately six weeks. They then decided to return to their own home, whereupon, the father, Harold, moved to their home along with the baby.

It is not disputed that the natural father paid for the support of the infant, including groceries, medical expenses, maid service, and diaper service and that this support continued until the time of his remarriage in 1952.

Thus, it is seen that for a period of approximately three and one half years the child lived in the home of the aunt and uncle with no apparent complications or difficulties arising among these people.

In 1952 when Harold Wolfenden remarried he stated to his brother and sister-in-law that it was his desire to take Beverly Ann into his own home. This proposal was absolutely refused by the brother and sister-in-law and it became such a matter of disagreement between them that Harold Wolfenden went into Juvenile Court to seek possession and custody of his child. Custody was awarded him by the Judge of the Juvenile Court but, upon appeal to the Circuit Court by Robert Wolfenden and wife, the case was heard by Special Judge John Hilldrop, and subsequently passed on by the regular Judge, and the decision of the Juvenile Court was reversed and custody awarded to the uncle and aunt.

Since that time the father has been trying continuously through the Courts to gain possession of his daughter.

In the meantime he has attempted to see his child on numerous occasions with very unsatisfactory results. The child has not been permitted to visit in his home and he and his wife generally have not been able to see the child except with the uncle or aunt present.

A reference to the Tennessee Department of Public Welfare was ordered for a report as to this child and its surroundings, including an appraisal of the father, stepmother, uncle and aunt. A comprehensive report was filed signed by Miss Rose Martin, Supervisor, and Miss Katherine Jones, County Director. We have examined this report and find that the testimony of the parties and witnesses, together with all the evidence in the record support the findings of fact in the report.

Without discussing the report and the evidence in detail, it is sufficient to say that the father, Harold T. Wolfenden, is shown to be trustworthy, industrious and

reasonably successful in business. A man who has the confidence and respect of his neighbors and all of those who testified about him. The same may be said of his second wife, the step-mother of Beverly Ann, and Robert C. Wolfenden and his wife Annabelle. In other words, all of these parties bear excellent reputations and there is nothing in the record to reflect on their morals or their characters. They are good Christian people who are constant in their attendance at church and this applies to all of them.

Harold T. Wolfenden was born on the 31st day of May 1911. His present wife, Catherine, was born July 1, 1913, while the uncle, Robert C. Wolfenden, was born January 3, 1909 and his wife March 13, 1907. All these people are in reasonably good health and both couples own comfortable homes and are in position to take care of Beverly Ann and her reasonable needs.

It should be added that Harold Wolfenden and his present wife have a son, Harold Wolfenden, Jr., born June 17, 1955. He is a normal healthy child who, according to the proof, is much interested in, and affectionate toward his sister.

Beverly Ann is a well adjusted, bright and beautiful young lady now about twelve years old. She has been the center of a serious controversy between these parties for a number of years.

The record reflects beyond peradventure of doubt, that Beverly Ann has been conditioned, either deliberately or unwittingly by her foster parents, the uncle and aunt, against her natural father and her step-mother. While Mr. and Mrs. Robert Wolfenden deny that they have ever said anything to Beverly Ann in derogation of her

father and deny that they have tried to turn her against her father and step-mother, and, while they may be sincere in making these statements, the fact remains that, by their attitudes and actions, the child has gained an adverse impression of her father and step-mother who have been motivated by an intense interest in this child.

On one occasion when the father went to the home of his brother and picked up his child in his arms stating that he wanted to take her to town or some place in his car, his brother, Robert, objected and insisted that he could not take the child with him. An argument ensued and Robert struck his brother Harold in the face with his fist knocking off and breaking his glasses and creating a very ugly scene not merely in the presence of the child but with her involved directly in this physical violence. The Court has no doubt whatever that the child has clearly understood, and has picked up from conversations that may have not been intended for her ears, the considerable feelings of animosity toward the father and his wife on the part of Robert C. Wolfenden and his wife. Thus, if the child is reluctant to visit with her father and step-mother, and there are some indications in the record of this, it is because of the attitude she has observed in her elders, and this, we think, is not only unfortunate but displays an intense selfishness on the part of Robert C. Wolfenden and his wife.

This is not to say that there has not been selfishness displayed on the part of Harold Wolfenden, and possibly his wife, as regards Beverly Ann, but it does seem that the Robert C. Wolfendens have made the situation more difficult for the child and for the father than was necessary or advisable.

We think the question of abandonment is extremely important in this case and, perhaps, decisive. The question is, whether or not this record will support the trial Judge's finding of abandonment on the part of the natural father.

In the opinion of this Court when the cause was remanded, abandonment was defined in the following language:

"Abandonment imports any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child. It does not follow that the purpose may not be repented of, and, in proper cases all parental rights again acquired * * but when abandonment is shown to have existed, it becomes a judicial question whether it really has been terminated, or can be, consistently with the welfare of the child." 1 Am. Jur. Adoption of Children, Section 42; Sec. 36-102 T.C.A.; Young v. Smith, 191 Tenn. 25, 231 S. W (2d) 365

The opinion stated, following the above definition, as follows:

"Compare our holding here with Young v. Smith, et al., supra, where it was held that, although the 1949 adoption statute expressly provided that an adoption could only be decreed upon a written consent of the parent, such consent would be inferred from an actual abandonment, so as to effectuate the primary purpose of the adoption law as above stated."

Can it be said under the facts of this case that Harold T. Wolfenden did, between the birth of the child and the date of the trial, abandon said child?

We do not think so. If there is anything in the record to support the proposition of abandonment it must stand on the testimony of Mrs. Annabelle Wolfenden to the effect that when it was proposed by Harold Wolfenden that she and her husband help take care of the child, she consulted her doctor and was advised that she should not undertake it unless it was to be a permanent arrangement, and that she told Harold Wolfenden about this advice, and that he agreed that the arrangement would be permanent.

Harold Wolfenden categorically denied this. He testified that his brother, at the time of the funeral of his first wife, volunteered to help by saying that if there was anything that he and his wife could do to help him in his situation, they stood ready to do so. He further testified that there was no discussion of the question as to whether the arrangement for the care of the child would be permanent or not. Harold Wolfenden testified that it was always his hope that some day he might have another home and that he expected to have his child with him. It is significant to note that there is testimony in the record to the effect that during the years before Harold remarried, Mrs. Robert Wolfenden (Annabelle) stated to one or more persons that she hoped she would not become too much attached to Beverly Ann because Harold was a comparatively young man and would probably remarry and want to take Beverly Ann away from her.

It is also significant to note what Robert Wolfenden testified about this matter. After relating his conversation with Harold about the child being cared for by him and his wife, he told Harold that they would have to get together with his wife Annabelle and discuss it.

They did meet together and, after she had consulted her doctor, she reported that the doctor told her that she was physically able to rear the child but only on condition that her brother-in-law would say it was a permanent arrangement. He stated that his wife told Harold at the time that Dr. Frist said that in all probability Harold would marry again and that, if he attempted to take the child away from her after she had become attached to it, it would (almost) kill her. The witness was asked, ''Well what did Harold say about that?'' His answer was, ''Harold accepted that.'' He was then asked what Harold said in accepting it, and he answered, ''He said, 'well I will attend to that' ''. The question was then asked ''Did you then take the child, and he said, ''Yes sir''.

The witness (Robert Wolfenden) then testified as to other matters and especially as to the occasion when his brother told him at Church one day that he had decided to remarry and would want to take Beverly Ann into his home. Robert and his wife refused to permit this and proceedings were started by which the father undertook to gain possession of his daughter and he has been litigating that question ever since.

In the face of the undisputed testimony that Harold Wolfenden did pay for the support of his child until the time that he was refused possession of her; and in the face of the further fact that he offered to continue to support her but this offer was refused by Robert Wolfenden and his wife; and in view of the record which is replete with facts which convince one beyond peradventure of doubt that Harold Wolfenden never, at any time, actually abandoned his daughter by any conduct which evinced a

settled purpose to forego all parental duties and to relinquish all parental claim to the child, we are constrained to believe that the learned Judge was in error in decreeing abandonment.

▉ The Courts will not sustain a finding of abandonment hung on such a slender reed. Abandonment, to warrant a Court in allowing an adoption over the protest of the natural parent, must be unequivocal. In re Norris, 157 Misc. 333, 283 N. Y. S. 513.

Evidence of such abandonment must be clear and convincing. In re Adoption of Strauser, 65 Wyo. 98, 196 P. (2d( 862; Strode v. Silverman, Tex. Civ. App., 209 S. W. (2d) 415; In Matter of Bistany, 239 N. Y. 19, 24, 145 N. E. 70.

Abandonment by natural parents may be found only when, being given benefit of every controverted fact, such inference follows from the evidence as a matter of law. People ex rel. Cocuzza v. Cobb, 196 Misc. 961, 94 N. Y. S. (2d) 616; Caruso v. Caruso, 175 Misc. 290, 23 N. Y. S. (2d) 239.

We think the summary and recommendations of the very capable Child Welfare Workers who were assigned the duty of investigating and reporting on this case are significant, especially inasmuch as the facts on which they based their summary are amply supported by the record. The report is in part as follows:

"Summary and Recommendation

"Although we found Beverly Ann's father and stepmother, Harold and Cora Wolfenden, to be of excellent character and able to provide what appears to be a secure and wholesome home, we were at no

time able to observe the child with the couple, and are unable to make any recommendation concerning Beverly's adoption by them. We were unable to determine their actual relationship to the child, as the child has not been permitted to be in the home with her father and stepmother in several years. We believe that Beverly Ann's attitude toward her father and stepmother may be one of 'tolerance', but, it has been impossible for us to learn her exact feelings, and how much her attitude has been influenced either by the resentful feelings of her aunt and uncle, or by the reported attempts of her father and stepmother to win her away from her aunt and uncle.

"Concerning the petition of the aunt and uncle, Robert and Annabelle Wolfenden, to adopt Beverly, it is our opinion that the child is not legally free to be adopted by this couple. The natural father has neither abandoned, neglected, nor voluntarily released his child, and therefore, we doubt that his parental rights can be legally terminated.

"We also feel that adoption by either party at this point would not resolve the central controversy. However, it does appear that Beverly, should perhaps be permitted time alone with her father and stepmother, *provided that they understand that they exercise no direct influence on Beverly that she come to live with them.*"

█ As stated by the appellants we are not unmindful of the fact that the uncle and aunt dearly love this child and that the child loves them. Harold Wofenden knew that would be the case and that is why he wanted their

help. He wanted this child to have the love that fate seemed about to deny her. At all times, he has done the best he could by her. He has never ceased to love her, or to be solicitous for her welfare. He is in his present plight not because he did too little but because he did too much.

With such a demonstrated attitude and feeling so clear that the Court commented on it from the bench, he could not, as a matter of law, be guilty of abandonment.

■ The difficulty in this matter is that the trial Judge felt that this child was better off in the home of the uncle and aunt. It may well be that many children would be better off in other homes—but that is not, and never has been, a ground for adoption. This is an adoption proceeding; not a custody determination.

"The rights of [the] parties and authority of the court in an adoption matter differs greatly from those in a chancery action involving mere custody, for adoption affects the course of inheritance, severing forever and conclusively the legal rights and interests of the natural parents, while custody is only a change into another relationship on a temporary basis." Jackson v. Russell, 342 Ill. App. 637, 97 N. E. (2d) 584 (quoted); In re Paden, 181 Misc. 1025, 43 N. Y. S. (2d) 305; In Matter of Bistany, 239 N. Y. 19, 24, 145 N. E. 70, 72.

We agree also that it is one thing to say that a person's actions have been such that a child cannot stay under his roof, but it is quite another thing to say that his actions are such that the Court by decree says, "This is no longer your child."

■■ We agree with the Welfare Department Supervisor, that adoption by either party at this point will not resolve the essential controversy. And, while we are constrained to leave the question of custody to the sound discretion of the learned trial Judge, we think that adoption, under the circumstances shown by this record, is not the proper course. The right should not be granted the uncle and aunt and thus permanently destroy the filial relationship between the child and her natural father.

We consider it the duty of the Court, if custody is continued in Robert Wolfenden and wife, to provide suitable visitation privileges for the father and his wife free from interference by the Robert Wolfendens. The child should be permitted to spend some time in the home of the father when it will not interfere with school and other normal activities.

If, as these parties claim, they are actuated by love for the child and not by their own selfish desires they will cease bickering and will cooperate for her good and their own peace of mind.

The cause will be remanded for such future orders as may be necessary and proper concerning the custody of the child, Beverly Ann Wolfenden. The petitions for adoption of both parties are denied. The costs will be equally divided.

Modified and remanded.

Hickerson and Humphreys, JJ., concur.