DONALD HUGH PIERCE et ux., SHELBY JEAN HOLT PIERCE, Petitioners-Appellees, v. GERALDINE BECHTOLD, Respondent-Appellant. —448 S.W.2d 425.

Middle Section.   April 25, 1969.

Rehearing Denied June 19, 1969.

Certiorari Denied by Supreme Court December 15, 1969.

Stanley L. Holtman, Berry & Berry, Franklin, for petitioners-appellees.

J. Vaulx Crockett, Rutherford, Crockett, Guenther & Davies, Nashville, for respondent-appellant.

TODD, J. In this adoption proceeding, the mother, Mrs. Geraldine Tyler Bechtold, has appealed from a

judgment of abandonment and award of custody to the petitioners, Mr. and Mrs. Donald Hugh Pierce pending adoption proceedings.

The facts are uncontroverted, except where indicated. The mother, Geraldine Tyler Bechtold, aged 28, was born Geraldine Sullivan. At an early age she was adopted by a family named Lepley because her mother, Mrs. Sullivan, had been abandoned by her husband and could not care for her three children. Mrs. Sullivan continued to be in contact with her daughter, Geraldine, and both she and the adoptive mother, Mrs. Lepley, participated in the events leading up to this controversy.

At some time not disclosed by the record, Geraldine married one Denny Tyler who was named a respondent herein but made no defense, and pro confesso was entered against him. To this union of Geraldine and Denny Tyler were born three children—Mike, Lisa and Shelba Jean. The last, Shelba Jean, the youngest of the three, born in December 1962, is the subject of this controversy.

Frank Andrews is a brother of Mrs. Geraldine Tyler Bechtold, and his wife, Mrs. Andrews, is a first cousin of Mrs. Pierce, one of the petitioners herein. Thus the petitioner, Mrs. Pierce, is first cousin of the sister-in-law of respondent, Mrs. Bechtold. Lillard Holt is the father of Mrs. Pierce. Mrs. Lillard Holt, the mother of Mrs. Pierce, is a first cousin to Mrs. Sullivan, mother of Geraldine. Therefore the petitioner, Mrs. Pierce, and the respondent, Geraldine Tyler Bechtold, are third cousins.

At some time in 1964, difficulties developed between Geraldine and Denny Tyler. There is evidence that they were divorced in 1964, but there is other evidence that their divorce did not become final until May 1965. In the

fall of 1964 or early in 1965, at the request of Frank Andrews, Mr. and Mrs. Pierce took Shelba Jean into their home because the mother, Geraldine Tyler, was having difficulty caring for her children after being abandoned by Denny Tyler.

Shelba Jean stayed with the Pierces several months, but this stay was frequently interrupted by visits with her mother. There is evidence that she spent about one-half the time with the Pierces and one-half the time with her mother.

On May 3, 1965, the mother was married to James Bechtold and shortly thereafter they moved to Portland, Oregon, taking with them the three Tyler children—Mike, Lisa and Shelba Jean. In Portland, difficulties arose between the mother and Bechtold. By October 1965, Bechtold had virtually abandoned the mother and children. He was not at home more than once a week and was not supporting them. Mrs. Bechtold was pregnant, and unable to work to earn a livelihood for herself and children. In this situation, the mother telephoned Mr. Lillard Holt and requested him to come to Portland and get the children. This he did.

Upon the return to Tennessee, the three children stayed with the Petitioners, Mr. and Mrs. Pierce, from October 1965 until March 1966. Since both Mr. and Mrs. Pierce worked, Mr. and Mrs. Holt assumed part of the responsibility of caring for the children. In March, 1966 this arrangement was terminated by the illness and hospitalization of Mr. Holt. At this time, the mother, Geraldine Tyler Bechtold, returned to Tennessee and reassumed the custody and care of the children with the assistance of her adoptive mother, Mrs. Lepley.

After Mr. Holt's discharge from the hospital, at the mother's request Shelba Jean returned to the Pierce home. Mike remained with the Lepleys, and the record does not disclose who took Lisa.

There is little evidence of the conditions upon which the Pierce's received Shelba Jean on this last occasion. They say that they expected the arrangement to be permanent, but cite no conversation to this effect. They rely upon a statement made by Geraldine to Mr. Holt in Portland, Oregon in October 1965 to the effect that "I will not let this happen again". The matter of support was mentioned. The Pierces insisted that no support payments were needed. When pressed to name an amount, Mrs. Pierce mentioned $5.00 per week, but no agreement was made for any support and none was ever paid.

The mother, Mrs. Bechtold, returned to Portland, Oregon, where she eventually obtained employment and established a home for herself and the baby she had borne to Bechtold. During the succeeding period of approximately two years, the mother returned to Tennessee for visits on several occasions. Mr. Pierce testified that this occurred five to eight times. On each occasion, Shelba Jean would stay with her mother for the two or three days of her visit.

The period of Shelba Jean's residence with the Pierces was ended in March, 1968 when Mrs. Bechtold returned to Tennessee for a visit of a few days. Mrs. Pierce consented to have Shelba Jean join her mother in the home where she was visiting. When asked, the mother stated that Shelba Jean would return to the Pierce home "next Sunday". On the evening of March 6, 1968, the mother began preparations to return to Oregon, and to take Shelba

Jean and the other two Tyler children with her. She telephoned Mr. Holt to request that he obtain Shelba Jean's clothes for her. She testified that she called "them" and told "them" of her plans, including the time of her planned departure from the airport at Nashville.

On the following day, March 7, 1968, the original petition for adoption was filed by Mr. and Mrs. Pierce and an injunction was issued to forbid the removal of Shelba Jean from the State of Tennessee. On the same day, the injunction was served upon the mother, Mrs. Bechtold, at the airport as she was about to board a plane with her three children. As a result, Shelba Jean did not board the plane, but remained in Nashville with her grandmother, Mrs. Sullivan, who had accompanied Mrs. Bechtold and children to the airport.

Some time later, Mrs. Bechtold sent money to Mrs. Sullivan to buy an airline ticket whereby Shelba Jean was sent to her mother in Oregon. Subsequently, a habeas corpus proceeding in Oregon resulted in the delivery of Shelba Jean to Mr. Holt who returned her to Tennessee, where she has remained to the present time.

The petition filed by Mr. and Mrs. Pierce, petitioners, against Geraldine Bechtold and Denny Tyler, respondents, alleged that the minor child, Shelba Jean Tyler, had been abandoned by her parents, the respondents, and that it was for the best interest of said minor child to be adopted by petitioners. The petition prayed for a judgment of abandonment, and a decree of adoption.

The answer of the respondent, Geraldine Bechtold, alleged that permanent custody of Shelba Jean had been committed to her by decree of the Fourth Circuit Court at Nashville in the case of Tyler vs. Tyler; that petition-

ers had requested and accepted temporary custody of said minor on several occasions; that there was never any discussion of permanent custody, relinquishment of permanent custody or abandonment. The answer specifically denied any abandonment.

At the conclusion of the hearing, the chancellor made the following statement:

"THE COURT: I think that the preponderance of the evidence here and the stronger preponderance of the evidence as far as I am concerned, it is for the best interest of the child that she be with the Pierces, as she has been abandoned, and I am so holding."

The decree contains the following:

"* * * the Court finds that the defendant, Geraldine Bechtold did in fact abandon her daughter, Shelba Jean Tyler.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED by this Honorable Court that:

\* \* \* \* \* \*

"That Shelba Jean Tyler has been abandoned by the defendant, Geraldine Bechtold, and that the custody of Shelba Jean Tyler is now vested in the petitioners, Donald Hugh Pierce and wife, Shelba Jean Holt Pierce, until termination of this adoption proceeding.

"The cost of this cause to the date of this decree shall be taxed to the defendant, Geraldine Bechtold, for which execution may issue.

"To the action of the Court the defendant, Geraldine Bechtold, excepts and prays an appeal to the next term of the Court of Appeals sitting at Nashville, which appeal is allowed by the Court upon defendant, Geral-

dine Bechtold, making bond or otherwise perfecting her appeal as required by law, * * *''

The assignments of error present the primary and determinative issue of the correctness of the chancellor's finding of abandonment.

In Ex Parte Wolfenden, 49 Tenn.App. 1, 349 S.W.2d 713 (1959), this Court held that where parental consent was absent, a judicial finding of abandonment was a necessary prerequisite of an adoption decree. The cause was remanded for additional hearing and findings on the issue of abandonment, under the following statement of law:

" 'Abandonment imports *any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child.* It does not follow that the purpose may not be repented of, and, in proper cases all parental rights again acquired. * * * but when abandonment is shown to have existed, it becomes a judicial question whether it really has been terminated, or can be, consistently with the welfare of the child.' 1 Am.Jur. Adoption of Children, Section 42." 49 Tenn.App. at p. 5, 349 S.W.2d at p. 714. (Emphasis added)

In the case of Fancher v. Mann, 58 Tenn.App. 471, 432 S.W.2d 63 (1968), a decree of adoption was reversed by this Court because the evidence was insufficient to establish the father's abandonment in view of his financial losses and the strictness of visitation rights in a divorce decree. In that case, this Court said:

"In order to constitute an abandonment, there must be an actual desertion accompanied with an intention

to entirely sever, so far as possible to do so, the parental relationship and throw off all obligations growing out of the same.

"When considering the issue of abandonment in relation to an adoption proceeding, it is incumbent upon the petitioner to prove the issue and to show the parent who is resisting the adoption has abandoned the child within the meaning of the statute dispensing with the necessity of consent of the parent. To do this we do not necessarily look to the protestations of affections and intentions expressed by the natural parent but must look at the past course of conduct. The evidence must clearly show a *conscious disregard or indifference to the parental obligations* for a court to forfeit the parental rights and obligations." 58 Tenn. App. at p. 476, 432 S.W.2d at p. 65. (Emphasis added).

"Even taking into consideration the limitations of the divorce decree and the attitude of the mother, we do not think Mr. Mann has shown the usual and proper concern for his children a parent should. Nevertheless, after a careful study of all the proof, *we cannot say the evidence here is so clear, convincing and unequivocal* to show that Mr. Mann '*evinces a settled purpose to forego all parental duties and relinquish all parental claims* to the child[ren].' In other words, the evidence here, though strong, does not meet the test set forth in Ex parte Wolfenden, supra, which requires a *clear, convincing and unequivocal showing of abandonment.*" 58 Tenn. App. at p. 479, 432 S.W.2d at p. 67 (Emphasis added)

Petitioners rely heavily upon the testimony of witnesses as to their beliefs and opinions of the permanency of the relinquishment of custody by the mother.

Mr. Holt testified as follows:

"Q. Mr. Holt, when you received custody of Shelby Jean did you believe that it would be on a permanent basis?

A. I thought it would at that time because Geraldine said she wouldn't let it happen again like that."

The quoted statement is equivocal. There is no showing of what it was that would not occur again. It is more reasonable to interpret the statement as a promise that the mother would not again involve herself in an unfortunate marriage, pregnancy and destitution requiring such assistance. What Mr. Holt "thought" or "believed" is, of course, irrelevant.

Petitioners rely upon the expense incurred by Mr. Holt in making the trip to Oregon. Such may support his expectation of a permanent relinquishment of the children, but the expectation of Mr. Holt or any one else is irrelevant to the issue of abandonment unless that expectation was communicated to and acquiesced in by the mother. It is the intent of the mother to effect an abandonment, not the expectation of others, that is controlling.

██ Petitioners rely upon the failure of the mother to support Shelba Jean. While failure to support is a circumstance of abandonment, it must be judged in the light of ability to support, and other circumstances. So long as a parent is financially unable to render financial support, the failure to do so cannot be voluntary, hence cannot constitute abandonment. Furthermore, the preexisting relationship of the parties as heretofore set out and the conversations between the mother and the peti-

tioners adequately demonstrate a situation in which the mother was justified in believing that her child was being generously provided for as a gratuity, and not at the price of the destruction of the mother-daughter relationship.

It frequently occurs that childless relatives welcome the opportunity of sheltering and supporting an attractive child, and consider the expense a privilege, rather than a burden. Such relatives are a boon to unfortunate and abandoned mothers, and their generosity is not expected to hide the trap of abandonment and ultimate loss of parent-child relationship. If there is any such expectation, the mother is entitled to be put on notice of the peril of accepting such generosity.

▉ Petitioners rely upon the extended length of time the child has been in their home as evidence of abandonment. Such is a circumstance, but must be weighed in the light of the facts of the case. The mother is shown to have taken the child into her charge and custody during each visit to Tennessee. The trip from Oregon to Tennessee is shown to be long and costly. Petitioners criticize the mother for using her limited funds for trips instead of earlier re-establishment of her home. Doubtless if the mother had been informed that the delay in regaining custody of her child would have been interpreted as an abandonment, her choice would have been otherwise.

Petitioner, Mrs. Pierce, testified as follows:

"Q. When you got Shelby Jean, Mr. Holt, your father brought Shelby Jean to your home—

A. To my home.

Q. —did you feel that was on a permanent basis?

A. I felt like we was entitled to her and I wanted her and I felt like it was on a permanent basis.''

The expectations of Mrs. Pierce, uncommunicated to the mother, or reasonably created by her words or actions, cannot create an abandonment.

The Wolfenden case, supra, reached this Court upon a second appeal. After remand for further hearing on the issues of abandonment, the trial judge entered a finding of abandonment and decree of adoption. This Court again reversed, holding the evidence insufficient to support a finding of abandonment and saying:

"The Courts will not sustain a finding of abandonment hung on such a slender reed. Abandonment, to warrant a Court in allowing an adoption over the protest of the natural parent, must be unequivocal. In re Norris, 157 Misc. 333, 283 N.Y.S. 513.

"Evidence of such abandonment must be clear and convincing. (Citing authorities)

"Abandonment by natural parents may be found only when, being given benefit of every controverted fact, such inference follows from the evidence as a matter of law. (Citing authorities)

"* * * It may well be that many children would be better off in other homes—but that is not, and never has been, a ground for adoption. This is an adoption proceeding; not a custody determination.

'The rights of [the] parties and authority of the court in an adoption matter differs greatly from those in a chancery action involving mere custody, for adoption affects the course of inheritance, sev-

ering forever and conclusively the legal rights and interests of the natural parents, while custody is only a change into another relationship on a temporary basis.' (Citing authorities) 48 Tenn.App. at p. 446, 348 S.W.2d at pp. 756-757.

Under all the circumstances of this case, which have been detailed with unusual particularity, this Court cannot agree with the chancellor that an abandonment has been shown. The actions of a destitute mother in relinquishing the custody of her children into kindred and sympathetic hands with the comment, ''I won't let it happen again,'' is not abandonment. Neither is abandonment effected by the continued aquiescence in the custody of such kindred and sympathetic hands and delay in re-assuming custody until it be shown that the destitute circumstances of the mother have been so rehabilitated as to enable and require her to resume custody. She says that she did this as soon as possible. There is no evidence otherwise.

The infrequency of visits (five to eight in two years) is not sufficient to establish any intent to abandon under the facts of this case.

The chancellor was understandably interested in and influenced by the superior environment and opportunities offered by petitioners. Such considerations are immaterial in this case. As pointed out in Wolfenden, supra, this is an adoption proceeding and not a custody case. In an adoption case a valid and properly supported judgment of abandonment is an absolute prerequisite to any exercise of judicial discretion as to custody.

This Court is not unmindful of the strong ties of affection which have naturally developed between petitioners

and Shelba Jean. Such ties do not depend upon the legalities of adoption, and will continue regardless of the decrees of courts. Each happy individual is blessed with multiple ties of affection, and none should impair or exclude the rest. Under the natural law and the law of the land, the ties between a mother and her child of tender years are of first priority and are not lightly severed. Thus the ties between Shelba Jean and her mother must come first, until otherwise determined by the overt unequivocal act of the mother, or the mature decision of Shelba Jean in later years.

This Court is not unmindful of certain handicaps facing this mother. Petitioners repeatedly state in their testimony that they do not question the fitness of the mother to have custody of Shelba Jean. If she should later prove to be unfit, the courts of Oregon, or any other jurisdiction where she should reside, are competent to judge her fitness and protect the welfare of Shelba Jean.

The finding of the chancellor that respondent, Geraldine Tyler Bechtold, has abandoned the minor, Shelba Jean Tyler, is not supported by the evidence and is reversed. As a consequence, the temporary custody decreed to petitioners must terminate upon finality of the decree of this Court, the custody of said child must be restored to her said mother and the injunction against her removal of the child from Tennessee must be dissolved. A further consequence is that the petition for adoption must be dismissed and all costs of this cause, including costs of this appeal must be taxed against petitioners, Mr. and Mrs. Donald Hugh Pierce.

The cause will be remanded to the chancery court for such proceedings as may be necessary to effectuate the disposition heretofore set out.

Reversed and remanded.

Shriver, P. J. (M.S.), and Puryear, J., concur.

## ON PETITION TO REHEAR

The petitioners-appellees, Donald Hugh Pierce and Shelby Jean Holt Pierce, have filed in this Court a petition to rehear in respect to the opinion filed in this cause on April 25, 1969.

The first ground of the petition to rehear is that petitioners are aggrieved because this Court ordered the custody of the minor child to be restored to her mother. It is insisted that a reversal of a decree of abandonment does not automatically result in awarding custody to the successful party, but that the cause should be remanded for discretionary award of custody by the trial court.

As was pointed out in the original opinion, the petitioners herein repeatedly stated in their testimony that they did not question the fitness of the mother to have custody of her child. The custody has been awarded to her in a divorce proceeding against the father who offered no defense in this case. The child was in the custody of the mother at the beginning of this adoption proceeding, and the mother was deprived of custody by extraordinary process issued ex parte and subsequent orders of the court.

■ If the mother was in lawful and rightful custody of the child and was deprived of that custody by judicial orders which have been held to be erroneous and vacated, what possible disposition could be made of the matter except to restore the situation and status which existed before the erroneous proceedings?

The second complaint of the petition is that this Court looked only to the intentions expressed by the mother without examining her past course of conduct to determine whether she abandoned the child and whether petitioners received the child on a permanent basis. A thoughtful reading of the opinion refutes the assumption that this Court ignored the mother's conduct. At least three pages of the opinion are devoted to a recitation of the mother's conduct. The petition to rehear calls attention to no particular act or event which was overlooked or ignored. The conduct and statements of the mother were not, under the circumstances, sufficient to demonstrate an intention to abandon.

As pointed out in the opinion, the issue of abandonment is determined not by the expectations or understandings of petitioners but rather the intentions of the parent as expressed by words and deeds.

Petitioners again cite Ex Parte Wolfenden, 48 Tenn. App. 433, 348 S.W.2d 751, which was discussed fully in the opinion. The Wolfenden case was remanded for further proceedings regarding custody, but it should be understood that the father did not have the child at the beginning of the proceedings as in the present case, and it was the father who was seeking to acquire custody, among other things. The Wolfenden opinion states:

"Since that time the father has been trying continuously through the Courts to gain possession of his daughter." 43 Tenn.App. at 438, 348 S.W.2d at 754.

On page 447, 348 S.W.2d on page 758, of the opinion is found:

"We consider it the duty of the Court, if custody is continued in Robert Wolfenden and wife, to provide

suitable visitation privileges for the father and his wife free from interference by the Robert Wolfendens. The child should be permitted to spend some time in the home of the father when it will not interfere with school and other normal activities."

There is no factual similarity between Wolfenden and the present case to require this Court to remand for further litigation.

Petitioners again cite Fancher v. Mann, 58 Tenn.App. 471, 432 S.W.2d 63 (1968), which was fully discussed in the opinion. Petitioners assert that the statement of this Court that:

"It is the intent of the mother to effect an abandonment, not the expectation of others, that is controlling"

is in conflict with Fancher v. Mann, but do not cite any statement in Fancher to the effect that the expectation of others is of any determinative consequence. The sentence immediately preceding the above quoted sentence includes the reservation:

"* * * unless that expectation was communicated to and acquiesced in by the mother."

In the Fancher case, as in the present case, all of the facts, circumstances, statements, actions and omissions were considered, and in each case they were held insufficient to effect an abandonment.

The petition to rehear is respectfully denied.

Shriver, P. J. (M.S.), and Puryear, J., concur.