# IN THE COURT OF APPEALS OF TENNESSEE

## AT KNOXVILLE

FILED

May 19, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

BETHANY CHRISTIAN SERVICES, INC.,

        Appellee,

v.

JONATHAN NATHANIEL JACKSON,

        Appellant.

IN THE MATTER OF:

JACOB ELIJAH MELTON.

) C/A NO. 03A01-9810-JV-00345
)
) HAMILTON JUVENILE
)
) HON. SUZANNE BAILEY,
) JUDGE
)
)
)
)
) AFFIRMED
) AND
) REMANDED


MICHAEL S. JENNINGS, SAMPLES, JENNINGS & PINEDA, P.L.L.C., Chattanooga, for Appellee.

BARBARA L. BROERSMA, Chattanooga, for Appellant.


## O P I N I O N


Franks, J.


In this termination of parental rights case, plaintiff Bethany Christian Services, Inc., sued the putative father, Jonathan Nathaniel Jackson, and the Trial Judge terminated Jackson's parental rights.

On December 1, 1997, Jacob Elijah Melton, was born to Jessica Renee Melton. Jessica identified the father as Jackson, and on December 2, 1997, Jessica entered into an agreement with plaintiff to surrender her parental rights to the child and to have the child placed for adoption. This action against Jackson was filed on December 10, 1997, alleging abandonment, and seeking custody for adoptive placement. Plaintiff later amended the Petition adding alternative grounds for

termination of parental rights under Tenn. Code Ann. § 36-1-113(g)(8)(A)(I), (ii), (iii), (iv), and (vi). (R. 18).

On February 18, 1998, Jackson filed an Answer and Counter-Petition, denying that he had abandoned his child , requesting blood tests to determine paternity, visitation with the child pending the results of the testing, and requesting, if paternity be established, that custody be placed with him or his parents.

In ordering termination after the evidentiary hearing, the Trial Court made findings of fact and stated she found by clear and convincing evidence:

> That the petition filed by Bethany Christian Services, Inc., is well taken and should be sustained and relief granted on the grounds of abandonment and other causes therein stated and as amended in that the respondent has willfully failed to visit and willfully failed to make reasonable payments toward the support of the child's mother during the four (4) months immediately preceding the birth of the child; that the respondent has failed, without good cause or excuse, to pay a reasonable share of prenatal, natal, and postnatal expenses involving the birth of the child in accordance with his financial means promptly upon his receipt of notice of the child's impending birth; that the respondent has failed, without good cause or excuse, to make reasonable and consistent payments for the support of the child in accordance with the child support guidelines promulgated by the department pursuant to 36-5-101; that the respondent has failed to seek reasonable visitation with the child; that the respondent has failed to manifest an ability and willingness to assume legal and physical custody of the child; that the respondent has failed to file a petition to establish paternity of the child within thirty (30) days after notice of alleged paternity by the child's mother.

The test results finding Jonathan to be the father were released on March 18, 1998. At the trial Jonathan testified that after the baby was born Jessica would see him at school and give him derogatory looks. She later started saying "hello" when he saw her. Sometime in February of 1998, Jessica approached him and said, "please don't go to the court, don't go, I want the baby to go to an adoption agency, whatever." He said that he told one of her friends that he wanted to see pictures, and that Jessica told the friend that she would not let him see any. He also said that he was not employed, but that he could get a summer job at the post office or a grocery store.

2

When asked if he is willing to accept custody and if he would like to have custody, he said, "Correct."

Except for filing the counter-action to get custody of Jacob, he made no effort to see the child. He admitted that Jessica told him she was pregnant and that he was the father. He also said that she called him sometimes, but that he was not allowed to speak to her. He knew that the baby was born in December because he saw Jessica at school. Though he knew the baby was born, he never attempted to check on the baby, and never offered Jessica any money to support the child.

The standard of review of this case is *de novo* upon the record of the Trial Court with the presumption of correctness of the Trial Court's findings, unless the evidence preponderates otherwise. T.R.A.P. Rule 13(d). We conclude the evidence does not preponderate against the finding by the Trial Court, by clear and convincing evidence, that Jackson abandoned his child and that the other factors justifying termination were present. It does not preponderate against the finding that termination and adoption are in the best interests of the child.[1]

Tennessee Code Annotated provides that "[t]ermination of parental or guardianship rights must be based upon: (1) A finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and (2) That termination of the parent's or guardian's rights is in the best interests of the child." Tenn. Code Ann. § 36-1-113(c) (Supp. 1998). The relevant grounds for termination of parental rights in this case are:

> (1) Abandonment by the parent or guardian, as defined in §36-6-102, has occurred; . . .
>
> (8)(A) The parental rights of any person who is not the legal parent or guardian of a child or who is described in § 36-1-117(b) or (c) may also be terminated based upon any one (1) or more of

---

[1] At the time of trial, Ms. Melton was age 14 and Jackson was 16.

3

the following additional grounds:

(I) The person has failed, without good cause or excuse, to pay a reasonable share of prenatal, natal, and postnatal expenses involving the birth of the child in accordance with the person's financial means promptly upon the person's receipt of notice of the child's impending birth;

(ii) The person has failed, without good cause or excuse, to make reasonable and consistent payments for the support of the child in accordance with the child support guidelines promulgated by the department pursuant to § 36-5-101;

(iii) The person has failed to seek reasonable visitation with the child, and if visitation has been granted, has failed to visit altogether or has engaged in only token visitation, as defined in § 36-1-102(1)(C);

(iv) The person has failed to manifest an ability and willingness to assume legal and physical custody of the child; . . .

(vi) The person has failed to file a petition to establish paternity of the child within thirty (30) days after notice of alleged paternity by the child's mother, or as required in § 36-2-318(j), or after making a claim of paternity pursuant to § 36-1-117(c)(3).

Tenn. Code Ann. § 36-1-113(g) (Supp. 1998).

In the past, abandonment had been defined by the courts as "any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child. . . ." *Ex Parte Wolfenden*, 48 Tenn. App. 433, 441, 348 S.W.2d 751, 755 (1961). To prove abandonment, the evidence had to show "an actual desertion, accompanied with an intention to entirely sever, so far as it is possible to do so, the parental relationship and throw off all obligations growing out of the same." *Fancher v. Mann,* 58 Tenn. App. 471, 476, 432 S.W.2d 63, 65 (1968).

In 1996, however, the General Assembly changed this definition of abandonment, setting forth in its place its own definition. The General Assembly explicitly stated:

"Abandonment" and "abandonment of an infant" do not have any other definition except that which is set forth in this section, it being the intent of the general assembly to establish the only grounds for abandonment by statutory definition. *Specifically, it shall not be required that a parent be shown to have evinced a settled purpose to forego all parental rights and responsibilities in order for a determination of abandonment to be made.*

4

*Decisions of any court to the contrary are hereby legislatively overruled."*

Tenn. Code Ann. § 36-1-102(1)(G) (1996) (emphasis added).

The definition of abandonment as contained in the Code is as follows:

(1)(A) "Abandonment" means, for purposes of terminating the parental or guardian rights of parent(s) or guardian(s) of a child to that child in order to make that child available for adoption, that:
(I) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or make reasonable payments toward the support of the child;
. . .
(iii) A biological or legal father has either willfully failed to visit or willfully failed to make reasonable payments toward the support of the child's mother during the four (4) months immediately preceding the birth of the child; provided, that in no instance shall a final order terminating the parental rights of a parent as determined pursuant to subdivision (1)(A)(iii) be entered until at least thirty (30) days have elapsed since the date of the child's birth;
. . .
(B) For purposes of this subdivision (1), "token support" means that the support, under the circumstances of the individual case, is insignificant given the parent's means;
(C) For purposes of this subdivision (1), "token visitation" means that the visitation, under the circumstances of the individual case, constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature of such short duration as to merely establish minimal or insubstantial contact with the child;
(D) For purposes of this subdivision (1), "willfully failed to support" or "willfully failed to make reasonable payments toward such child's support" means that for a period of four (4) consecutive months, no monetary support was paid or that the amount of support paid is token support;
(E) For purposes of this subdivision (1), "willfully failed to visit" means that willful failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation;
(F) Abandonment may not be repented of by resuming visitation or support subsequent to the filing of any petition seeking to terminate parental or guardianship rights or seeking the adoption of a child;

Tenn. Code Ann. § 36-1-102 (Supp. 1998).

Jackson argues that he did not abandon the child, but he relies solely on the definition of abandonment in the court cases that were legislatively overruled by the statutory definition of abandonment. Applying the statutory definition, as the statute requires, clear and convincing evidence establishes that Jackson did abandon his child.

It is undisputed that Jackson made no support payments to Jessica while she was pregnant or after the baby was born. It is also undisputed that Jackson made no attempt to visit Jessica while she was pregnant or visit the child after he was born. Instead, Jackson avoided contact with Jessica by refusing to take her phone calls and refusing to talk to her at school. Since there was no visitation or support of Jessica before the child was born, this is clearly a situation that falls within the definition of abandonment found in Tenn. Code Ann. § 36-1-102(1)(A)(iii), which merely requires a willful failure to visit or willful failure to make reasonable payments toward the support of the child's mother for four months immediately preceding the birth of the child.

Willful failure to visit means minimal or insubstantial contact, and willful failure to support means that no monetary support, or only token support, was paid for a period of four consecutive months. Moreover, other grounds exist for terminating the parental rights of Jackson. The statute provides six additional grounds for termination of the rights of a person who is not the legal parent. These grounds apply to Jackson. *See* Tenn. Code Ann. § 36-1-113(g)(8)(A). Any of these grounds constitutes a basis to terminate parental rights, but five are applicable to Jackson. Ground (I) states that the "person has failed, without good cause or excuse, to pay a reasonable share of the prenatal, natal, and postnatal expenses involving the birth of the child in accordance with the person's financial means promptly upon the person's receipt of notice of the child's impending birth." Jackson was notified of the

pregnancy sometime in April, 1997, and the child was born December 1, 1997. Jackson knew that the child was born in December. Though he admitted that he was in good physical shape and could get a job, he made no attempt to pay any of the expenses of the birth of the child. He cannot rely upon Jessica's failure to contact him or provide him with bills, because he had the responsibility to initiate contact and give support.

Ground (ii) states that "the person has failed, without good cause or excuse, to make reasonable and consistent payments for the support of the child in accordance with the child support guidelines . . . ." Granted, Jackson was not employed, but he testified that he was capable of some type of employment. The child support guidelines provide for imputing income to persons who are voluntarily unemployed. Jackson thus has no good excuse for failing to make some type of support payments.

Ground (iii) provides that the "person has failed to seek reasonable visitation with the child . . . ." Jackson has never made an attempt to see the child. As of the time of trial, when the child was almost five months old, Jackson had never seen the child, and this factor is undisputedly present.

Ground (iv) provides that the "person has failed to manifest an ability and willingness to assume legal and physical custody of the child." Jackson was informed of the impending birth of his child in April, 1997, and he knew the child was born in December, 1997. During the pregnancy and after the birth, he never initiated any contact with Jessica.

Lastly, ground (vi) provides that the "person has failed to file a petition to establish paternity of the child within thirty (30) days after notice of alleged paternity by the child's mother." Jackson did not file a petition to establish paternity, and did not admit the paternity until March, 1998, when blood tests were returned.

7

The statute, however, requires only notice of *alleged* paternity, not certain paternity. Under the terms of the statue, this ground for termination of parental rights exists as well.

We affirm the judgment of the Trial Court in all respects.

Jackson has raised the issue of the constitutionality of T.C.A. §36-1-113 as applied to unborn children of unwed parents. This issue was not raised in the Trial Court, and the Tennessee Supreme Court has stated, "It has long been the general rule that questions not raised in the trial court will not be entertained on appeal and this rule applies to an attempt to make a constitutional attack upon the validity of a statute for the first time on appeal unless the statute involved is so obviously unconstitutional on its face as to obviate the necessity for any discussion." *Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn. 1983). Nor was the Attorney General notified of any challenge, as required by Tenn. R. Civ. P. 24.04. Since the issue was not raised in the Trial Court, and since the statute is not so "unconstitutional on its face as to obviate the necessity for any discussion," we decline to consider this issue on appeal.

Accordingly, we remand the case to the Trial Court with cost of the appeal assessed to the appellant.

_____

_____
Herschel P. Franks, J.

CONCUR:


_____
Houston M. Goddard, P.J.


_____
Charles D. Susano, Jr., J.

8