### In re ADOPTION OF William Chase SELF.

**Lisa Clair ZARTMAN and Husband, Dan Zartman, Petitioners/Appellees,**

v.

**Donn Paul SELF, Defendant/Appellant.**

Court of Appeals of Tennessee,
Western Section, at Jackson.

April 15, 1992.

Application for Permission to Appeal
Denied by Supreme Court
July 20, 1992.

John B. Bond, Brownsville, for defendant/appellant.

J. Roland Reid, Brownsville, for petitioners/appellees.

TOMLIN, Presiding Judge (Western Section).

This case involves the attempted termination of parental rights in order to allow the adoption of a minor child. Lisa Clair Zartman, the natural mother of the child in question, and her husband, Dan Zartman,[1] filed suit in the Chancery Court of Haywood County against Donn Paul Self, respondent and natural father of the child. Petitioners sought a court order declaring the minor child, William Chase Self, to have been abandoned by respondent and permitting Dan Zartman to adopt him. In the alternative, Mrs. Zartman sought to have respondent found in contempt of court for failing to comply with a previous court order concerning the payment of child support. Following a bench trial, the chancellor granted the petition for adoption, finding that respondent had abandoned his natural child, and that petitioner Dan Zartman was a fit and proper person to adopt the child. The court also found that respondent was in arrears in child support and fees in the amount of $4,203.15 and entered judgment against respondent in that amount. Respondent does not appeal from this aspect of the judgment. The sole issue presented is whether the trial court erred in finding that respondent had abandoned the minor child, thus permitting the adoption. We hold that the trial court erred and reverse as to this issue.

Mrs. Zartman and respondent were divorced in April, 1984. At the time of the divorce, she was pregnant with the parties'

son, who was born some six weeks following entry of the divorce. Mrs. Zartman was awarded custody of the child and has had custody and sole responsibility for raising him since his birth. At the time of the divorce, respondent was granted visitation rights and ordered to pay child support in the amount of $25 per week.

After hearing testimony of the parties and their respective witnesses, the trial court ruled as follows:

Now, for some reason, he hasn't paid any support in the last four years and he hasn't exercised any visitation, nor has he tried to. So, the Court can only conclude from that that he did abandon the child and enters an Order adjudging that he has abandoned his child.

And, whether you intended to or whether you really intended to abandon the child or not, I think you effectively have. You haven't sent any Christmas cards; you haven't sent any Christmas presents; you haven't called and tried to talk to the boy; you haven't done any of those things. You only lived an hour and a half away [from] here for four years in Holly Springs. And, of course, you came to see your mother. And, the record, I think, is just clear that you—you just haven't done any of those things, and I cannot do anything but assume that it's been willful. . . .

■ This case was tried without the intervention of a jury, and our scope of review on appeal is *de novo* upon the record of the trial court. The findings of that court come to us with a presumption of correctness, and absent an error of law, unless we find that the evidence preponderates against these findings, we must affirm. Rule 13(d) T.R.A.P.

We are of the opinion that the trial court failed to apply the proper standard in reaching its conclusion. The appellate courts of this state have spoken clearly as to the standard applied by trial courts in considering a petition for a declaration of abandonment. In *Ex Parte Wolfenden*, 48

---

1. Petitioners will be referred to as "Mrs. Zartman," or "Dan Zartman," or "petitioners."

Tenn.App. 433, 348 S.W.2d 751 (1961), this Court quoted with approval the following:

Abandonment imports any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child. It does not follow that the purpose may not be repented of, and, in proper cases all parental rights again acquired * * * but when abandonment is shown to have existed, it becomes a judicial question whether it really has been terminated, or can be, consistently with the welfare of the child. (citations omitted)

*Id.* at 441, 348 S.W.2d at 755.

The *Wolfenden* Court continued in stating:

Abandonment, to warrant a Court in allowing an adoption over the protest of the natural parent, must be unequivocal.

Evidence of such abandonment must be clear and convincing.

Abandonment by natural parents may be found only when, being given benefit of every controverted fact, such inference follows from the evidence as a matter of law. (citations omitted)

*Id.* at 444, 348 S.W.2d at 756.

In *Fancher v. Mann,* 58 Tenn.App. 471, 432 S.W.2d 63 (1968), this Court quoted with approval as follows:

In order to constitute an abandonment, "there must be an actual desertion, accompanied with an intention to entirely sever, so far as it is possible to do so, the parental relationship and throw off all obligations growing out of the same." (citations omitted)

*Id.* at 476, 432 S.W.2d at 65.

The *Fancher* Court continued as follows:

When considering the issue of abandonment in relation to an adoption proceeding, it is incumbent upon the petitioner to prove the issue and to show the parent who is resisting the adoption has abandoned the child within the meaning of the statute dispensing with the necessity of consent of the parent. To do this we do not necessarily look to the protestations of affections and intentions expressed by the natural parent but must look at the past course of conduct. The

evidence must clearly show a conscious disregard or indifference to the parental obligations for a court to forfeit the parental rights and obligations.

*Id.*

This Court in the more recent case of *Koivu v. Irwin,* 721 S.W.2d 803 (Tenn.App. 1986), restated these principles as follows:

Abandonment, as it pertains to an adoption proceeding, is defined in this state as any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child. Evidence of an abandonment must be clear and convincing. The evidence must clearly show a conscious disregard or indifference to the parental obligations for a court to forfeit the parental rights and obligations. To determine an abandonment the court is not to look at the protestations of affections and intentions expressed by the natural parents, but look at the past course of conduct. (citations omitted)

*Id.* at 807.

■ The record in this case establishes that since 1987, respondent has not paid any child support. In addition, on three different occasions in 1985 and 1986 Mrs. Zartman resorted to the courts in order to force respondent to pay the child support he was obligated to pay. In addition, Mrs. Zartman testified that in the almost seven years since the child's birth, respondent made no effort to pay any medical bills incurred on behalf of the child.

There was also testimony by Mrs. Zartman that over the past several years, perhaps as many as five, respondent has made no effort to see his child nor to send him any presents or cards on special occasions. However, testimony as to visitation or attempted visitation is in sharp conflict. Both respondent and his parents testified that Mrs. Zartman made it quite difficult for both respondent and his parents to visit with the child. Respondent's mother testified about one occasion when she sought to have her grandchild come to visit her and Mrs. Zartman advised respondent's mother

**584**

that she would permit the child to visit so long as the respondent was not permitted to see the child during the visit.

It appears that the parties placed themselves in a stalemate over the child. Mrs. Zartman testified that inasmuch as respondent had failed and apparently refused to pay child support, she was not going to let him see the child. Respondent, on the other hand, testified that after several attempts to see the child and being made aware of Mrs. Zartman's attitude, he decided that if he was not going to be permitted to exercise his visitation rights, then he was not going to pay child support. Both parents need to understand that their child must not and cannot be used as a bargaining tool. While it appears from the record that respondent stopped paying child support when it was made apparent by Mrs. Zartman that he could not see the child, it is even more apparent to this Court that Mrs. Zartman took the position that if child support was *not* paid, respondent would not be able to exercise his visitation rights. This cannot be. The court has given these rights unconditionally. Mrs. Zartman cannot take them away.

Notwithstanding respondent's failings in the past, he is entitled to get to know his son. Unless this places the son in some danger, the mother must cooperate. By the same token, respondent has both a legal and moral obligation to pay child support, whether or not he chooses to exercise his visitation rights.

It is one thing for the court to hold that a parent's actions have been such that a child cannot stay under his roof, but it is quite another thing to hold that his actions are such that the court by decree states "this is no longer your child." In this case, there is a sharp conflict in the testimony of the parties and their witnesses as to whether the failure to give respondent visitation prompted the non-payment of child support, or the non-payment of child support prompted the refusal of the child's mother to let respondent visit with him. At any rate, we are of the opinion that the evidence does not meet the legal standard imposed by this state of being clear, con-

vincing, and unequivocal. Failing that, this Court will not sever the parental relationship between respondent and his child.

While the record is clear that respondent has not been a good parent in many respects, it does not support a finding of abandonment as defined by the courts in this state. Accordingly, that portion of the decree finding respondent had abandoned his son is reversed. The decree in all other aspects is affirmed. Costs in this cause are taxed one-half to petitioners and one-half to respondent, for which execution may issue if necessary.

CRAWFORD and FARMER, JJ., concur.