## IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
## AT NASHVILLE

_____

|  |  |  |
|---|---|---|
| **STATE OF TENNESSEE DEPARTMENT OF HUMAN SERVICES**, | ) ) ) ) | Cannon Juvenile No. 497 |
| Plaintiff/Appellee, | ) ) | |
| VS. | ) ) | C.A. No. 01A01-9703-JV-00116 |
| **LISA PICKETT BRANDT MANIER**, | ) ) | |
| Defendant/Appellant, | ) ) ) | |
| **IN THE MATTER OF**: **LISA NICOLE BRAND a/k/a BRITTANY NICOLE BRANDT**, **D.O.B. 3/30/91** and **SHAWN RUSSELL BRANDT, D.O.B. 11/30/92**, **Children under 18 years of age**. | ) ) ) ) ) ) ) ) ) ) | |

**FILED**

**October 31, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

_____

From the Juvenile Court of Cannon County at Woodbury.
**Honorable John B. Melton, III, Judge**

**Dale W. Peterson**, Woodbury, Tennessee
Attorney for Defendant/Appellant.

**John Knox Walkup**, Attorney General & Reporter
**Douglas Earl Dimond**, Assistant Attorney General
Attorney for Plaintiff/Appellee.

OPINION FILED:

**AFFIRMED AND REMANDED**

**FARMER, J.**

**CRAWFORD, P.J., W.S.**: (Concurs)
**HIGHERS, J.**: (Concurs)

This is a termination of parental rights case. The children involved are Lisa Nicole Brandt a/k/a Brittany Nicole Brandt, born March 30, 1991, and Shawn Russell Brandt, born November 30, 1992. Pursuant to a petition filed by the State of Tennessee, Department of Human Services (Appellee),[1] the trial court terminated the parental rights of their natural mother and father, Lisa Pickett Brandt Manier and Richard Brandt. Only Mrs. Manier has appealed from the trial court's decision. For the reasons set forth below, we affirm.

Appellee filed its petition to terminate the parental rights of Appellant on December 12, 1995 alleging that the children had been in its legal custody and in foster care since June 19, 1993 and that Appellant had abandoned her children as defined by statute and had failed to comply with the statements of responsibilities as provided in the "Plans of Care" entered into between the appellant and Appellee. Appellee alleged that termination was in the best interests of the children. For answer, Appellant denied all material allegations of the petition and requested that the children be returned to her.

After a hearing, the trial court entered a final decree of guardianship, finding as follows:

> [T]he Petition . . . is well taken and should be sustained and relief granted thereunder for the causes as therein stated in that . . . [Appellant] . . . ha[s] abandoned the children, LISA NICOLE BRANDT a/k/a BRITTANY NICOLE BRANDT and SHAWN RUSSELL BRANDT, pursuant to *T.C.A.* § 36-1-113(g)(3)(A) *et seq*. in that said children have been in foster [care] for a period in excess of one (1) year, and that the conditions which lead to the removal of said children from said [Appellant] still persist and there is little likelihood that these conditions will be remedied at an early date, so that said children can be returned to said [Appellant]; that . . . [Appellant] . . . ha[s] willfully abandoned the children, . . . for more than four (4) consecutive months next preceding the filing of the Petition in this cause in that . . . [Appellant], has not visited said children since around July 13, 1995, and has not made any contributions whatsoever towards the support of said children since the date said children were placed with your Petitioner, . . . and further, that pursuant to *T.C.A.* § 37-2-403(2), . . . [Appellant] . . . ha[s] failed to comply with the Statements of Responsibilities as provided in the Plans of Care entered into by said [Appellant] with [Appellee]. It is, therefore, in the best interest of said children and the

---

[1]The record indicates that since the filing of the petition, the name of this department was changed to the Department of Children's Services. T.C.A. § 37-5-101. For clarity, we will refer to the department as the Department of Human Services or DHS throughout this opinion.

public that the [Appellant's] parental rights to said children be forever terminated . . . .

We perceive the issue on appeal as whether the trial court erred in its decision to terminate the parental rights of Appellant as to the children herein named. Our review of this case, tried without the intervention of a jury, is *de novo* upon the record, accompanied by a presumption of correctness of the trial court's findings of fact. Unless the evidence preponderates otherwise, we are to affirm, absent error of law. ***In re Adoption of Self***, 836 S.W.2d 581, 582 (Tenn. App. 1992); Rule 13(d) T.R.A.P.

T.C.A. § 36-1-113, pertaining to the "termination of parental rights," states at subsection (c): "[t]ermination of parental or guardianship rights must be based upon: (1) a finding by the court by clear and convincing evidence that the grounds for termination o[f] parental or guardianship rights have been established; and (2) [t]hat termination of the parent's or guardian's rights is in the best interests of the child." Section 36-1-113(g) provides, in part pertinent:

> Termination . . . may be based upon any of the following grounds:
> (1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred;
> (2) There has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan or a plan of care pursuant to the provisions of title 37, chapter 2, part 4;
> (3)(A) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:
> (I) The conditions which led to the child's removal or other conditions which in all reasonable probability would cause the child to be subjected to further abuse or neglect and which, therefore, prevent the child's return to the care of the parent(s) or guardians(s), still persist;
> (ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be returned to the parent(s) or guardian(s) in the near future; and
> (iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a stable and permanent home.

T.C.A. § 36-1-102(1)(A) defines abandonment, as relevant here:

(1)(A) "Abandonment" means, for purposes of terminating the

parental or guardian rights of parent(s) or guardian(s) of a child to that child in order to make that child available for adoption, that:

(I) For period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or make reasonable payments toward the support of the child;

The record establishes that the two children were removed from the home of Shirley Pickett (their maternal grandmother) and placed in state custody in June 1993. Both Appellant and Richard Brandt were serving jail sentences at the time.[2] The children have since remained in foster care. After divorcing Mr. Brandt, Appellant married Ricky Manier with whom she had two children.

At trial, Mr. Manier conceded that he did not comply with the court approved plans of care outlined by Appellee, including the requirements that he refrain from any further criminal activity; cooperate in an alcohol and drug evaluation, including any recommended treatment; participate and cooperate in a psycho-social assessment; and participate in counseling to address his violent tendencies. Manier maintained that his "work schedule" prevented his compliance. On his days off from work, he "spent time with [his own children]." Manier admitted to past drug use, but stated that he had not used drugs for over a year. He admitted hitting the appellant. He acknowledged that the plan of care was designed to address this type behavior, but stated that he had only struck Appellant once and that he was "not the kind of person to hit [his] wife." Manier testified that since his marriage to Appellant, he had been arrested for drag racing and, most recently, for assault. He stated that under the plan of care he was to attend a therapeutic nursery with Appellant and the children for forty hours, but was actually present for only four.

Appellant testified to executing two plans of care, dated August 10, 1994 and April 11, 1995, respectively. At both times, she was made aware by DHS that proceedings would be initiated to terminate her parental rights should significant progress not be made under the plan of care. A statement to this effect was also included in the plans of care. The plan of care designed

---

[2]The record indicates that Appellant was incarcerated for fourteen counts of theft and forgery. The youngest child, Shawn, was born while the appellant was incarcerated. He then went to live with Ms. Pickett.

for Appellant addresses the fact that she has four children under the age of four. Her obligations and responsibilities in this regard were to work with the staff at a therapeutic nursery "to learn how to meet the physical & emotional needs of all 4 children & help all the children to understand & accept the family unit." The plan of care also required Appellant to present a written plan "of how she is going to manage a home, a job & 4 children, ages 4 and younger." She was additionally required to refrain from any further criminal activity and fulfill all court obligations such as fines and participate in a psycho-social assessment and counseling. Appellant testified that she completed some 44 hours in parenting classes required under the plan. On cross-examination, Appellant stated that she provided Appellee with a written plan regarding care for her four children. She did not participate in a psycho-social evaluation. She and Mr. Manier did not attend counseling to address issues of domestic violence. She conceded that Mr. Manier had not complied with any requirements under the plan of care.

Appellant ceased visitation with her children on July 13, 1995 after being informed by DHS that a petition would be filed to attempt to terminate her parental rights. She acknowledged, however, being informed by Joel Player, a social counselor with DHS, that she could continue visitation until such filing. She further testified:

Q. Did Mr. Player not tell you at that time that you could continue visitation until the petition was filed?

A. He said you can go ahead, and . . . still visit. But, . . . my mind is made up. We're going for the termination . . . .

Q. But you chose not to do the visits?

A. I thought about it for a couple of weeks, and he said that they were going to set a court date very soon. And, . . . he didn't put a date on it exactly. But he said it was soon. I mean, he didn't say it was going to go on like for months and months. So, I was just kind of getting like prepared for that.

Q. All right. But even getting prepared for that you still did not visit the children?

A. No, ma'am.

Appellant further admitted paying no child support for the four months preceding the filing of the petition. She explained that Player never informed her that she had to pay child support,

nor was she ever under any court order to do so. She admitted receiving a letter from Appellee, months after it was sent to her old address, concerning her obligation to make child support payments. After responding to the letter and informing Appellee of her new address, she was never contacted again. Appellant's two other children currently reside with her and she is under no state investigation regarding their care. She believes she can care for all four of her children.

Joel Player testified that the petition to terminate was based on two grounds: abandonment and noncompliance with the plan of care "which the parents signed and agreed to." Player testified regarding Appellant's failure to visit her children for a consecutive four month period and acknowledged Appellant's complete failure to provide any child support for her children since DHS obtained custody. Player stated that Appellant had failed to comply with the major portions of her plan of care. As to the "written plan" required of her, he stated, "[s]he gave kind of a sketchy account to the Foster Care Review Board . . . , but it wasn't what we had discussed and asked her to do." According to Player, Appellant attended counseling, but discontinued her sessions prior to successful completion.

On cross-examination, Player admitted that there is no evidence indicating that Appellant was under a court ordered obligation to provide support for the children. Player stated that Appellant visited with her children in accordance with the plan of care up until the time she married Mr. Manier at which time her "visitation really started deteriorating." Her visitation ceased altogether after the birth of her fourth child and her return to work. Player related specific instances of domestic violence regarding the Maniers, including an incident where Mr. Manier struck Appellant in the face (approximately a year prior to the hearing) and an incident where Appellant was forced to leave her home and reside at a domestic violence shelter (within the last six (6) months preceding the hearing). Player informed Appellant that due to her marriage to Manier, the two would be viewed as a "parenting unit" for the children and that it would be necessary for Mr. Manier to be included in the plan of care.

Sarah Rollins, a therapeutic preschool coordinator, testified that Appellant attended the nursery to attain parenting skills from August 1994 until January 1995. Appellant "completed" a six-week, 40 hour "behavior modification" course and another four hour course on abuse

prevention training, but had difficulty applying what she had learned in the classroom setting.

Meredith Carmichael testified that Appellant was referred to her by DHS for outpatient psychotherapy to address problems related to her regaining custody of her children. Carmichael treated Appellant from November 1993 to April 1995. Although she initially noted some improvement, a decline was observed beginning in July 1994, several weeks after Appellant married Mr. Manier. Treatment ceased altogether in April 1995 when Appellant stopped coming for her sessions. Carmichael does not consider Appellant to have successfully completed her therapy.

Lynn Bourgeois, Appellant's probation officer, testified that Appellant had failed to comply with the financial obligations of her probation. Although a violation report had been issued, Bourgeois recommended that Appellant be allowed to remain on probation. Bourgeois noted, however, that with any violation, there is a possibility of a return to incarceration. Bourgeois does not believe that incarcerating Appellant for the violation "would assist in any future development or add to her stability." Bourgeois stated that Appellant has been employed at Middle Tennessee Medical Center for two years and has "been very dedicated to her employment." Bourgeois confirmed that Appellant was making "very small payments" in an effort to satisfy her financial obligations but considered Appellant to have "financial management problems with her money and the income in her household." Since the 1992 incidents resulting in Appellant's probation, Bourgeois was not aware of any other criminal activity by Appellant.

Appellant first argues that the trial court erred in terminating her parental rights under T.C.A. § 36-1-113 because there exists no clear and convincing evidence of the requirements for termination listed under subsection (g)(3)(A). Appellant insists that Appellee presented no evidence that the continuation of the parent child relationship greatly diminishes the children's chances of early integration into a stable and permanent home or that the conditions which lead to the children's removal still exist. Appellant asserts that the fact that she presently cares for her two other children in her home, which are not subject to a DHS investigation, establishes that the conditions giving rise to the removal of the (Brandt) children no longer exist.

We believe that Appellant has misinterpreted the language of § 36-1-113(g). In construing statutes, we are to ascertain and give effect to the General Assembly's intentions. We must consider the statute as a whole in light of its general purpose and give the words utilized in the statute their ordinary, commonly accepted meaning. *Computer Shoppe, Inc. v. State*, 780 S.W.2d 729, 735 (Tenn. App. 1989). An unambiguous statute must be interpreted according to its plain meaning. *McClain v. Henry I. Siegel Co.*, 834 S.W.2d 295, 296 (Tenn. 1992).

As we interpret the plain language of this statute, subsection (g) sets forth several grounds for termination of one's parental rights, "any" of which are appropriate for doing so if shown by clear and convincing evidence. The record before us clearly reveals the two grounds for termination on which the petition was filed and on which Appellee relies, as those identified under § 36-1-113(g)(1) - abandonment and (2) - parental noncompliance with the statement of responsibilities in a plan of care. It is unnecessary, therefore, in the present case to consider whether the conditions for termination identified in (3)(A) have been satisfied.

Appellant next asserts that the record fails to establish by clear and convincing evidence that she abandoned her children as such is defined under § 36-1-102(1)(A). Subsections (D) and (E) of § 36-1-102 provide:

> For purposes of this subdivision (1), "willfully failed to support" or "willfully failed to make reasonable payments toward such child's support" means that, for a period of four (4) consecutive months, no monetary support was paid or that the amount of support paid is token support;

> For purposes of this subdivision (1), "willfully failed to visit" means the willful failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation;

Appellant maintains that a "willful" failure to pay support cannot be shown when she was unaware of any obligation to do so. Appellant does not dispute the fact that she failed to make any payments toward the support of her children. She points only to the fact that she was under no court order to do so and was otherwise unaware of this responsibility. We dare say that the support of one's children should not be conditioned upon whether one has been placed under a court order to do so. According to the statute, a "willful" failure to pay support means no monetary support was

paid for a period of four (4) consecutive months. The statute does not require the parent to first be placed under a court order. In any event, Appellant testified that she received correspondence from Appellee concerning her obligation in this regard. We conclude that the record establishes by clear and convincing evidence that Appellant "willfully failed to support" her children as such is defined by statute.

Appellant also asserts that the record does not establish by clear and convincing evidence her willful failure to visit the children for the stated time period. It is contended that Appellee "actively participated in discouraging [Appellant] from visiting her children" and, thus, her failure to visit cannot be seen as willful. It is not disputed that Appellant's visitation with the children ceased July 13, 1995, five months prior to the filing of the petition. Apparently Appellant contends that she was "manipulate[d]" into doing so when Mr. Player informed her that a petition would be filed seeking to terminate her parental rights, thereby suggesting that any future efforts on her part would be of little import.

First, it should be noted that Appellant testified that Player, upon informing her of Appellee's intention to seek termination, also explained her right to continue visiting with the children until the filing of the petition. As Player noted in his testimony, Appellee believed there were other existing grounds on which to seek termination. More importantly, however, as we interpret the plain meaning of the statute, abandonment consists of "either" a willful failure to visit "or" a willful failure to support for the stated time period. Thus, a willful failure to support or make reasonable payments toward such support for four (4) consecutive months is alone sufficient to constitute an abandonment. It is, therefore, unnecessary to consider this argument in light of our finding above. In any event, we find the record to clearly establish a "willful" failure to visit by the appellant for purposes of the statute.

Finally, it is asserted that the trial court erred in terminating the parental rights of Appellant because the record does not establish by clear and convincing evidence that she was in substantial noncompliance with her statement of responsibilities. Section 36-1-113(g)(2) provides for termination of one's parental rights if it is shown by clear and convincing evidence that the parent was in "substantial noncompliance" with the statement of responsibilities. *See also* T.C.A. § 37-2-

403(a)(2)(C). Appellant argues that she was "trying" to comply with the plan of care and of the seven identified elements, she had completed two and "had worked on" three others. She points to the fact that the trial judge made no specific finding of "substantial" noncompliance and further contends that the trial court erred in failing to consider the fact that two other children remain in her home which are not subject to a DHS investigation which, she asserts, establishes that she can provide a suitable home for the children.

We reiterate that substantial noncompliance with the statement of responsibilities is only one of several grounds upon which parental rights may be terminated under § 36-1-113. We have previously determined the record to establish an "abandonment" of the children by the appellant as it is defined by statute. However, in light of the gravity of this matter and the extreme importance of the rights involved here, we have considered the issue. It is always most unfortunate when circumstances present themselves to the extent that it is necessary to terminate the rights of a parent. Upon thorough review of the record now before us, however, we are compelled to conclude that the evidence presented supports a finding that Appellant is in substantial noncompliance with her statement of responsibilities as outlined in her plan of care. There is no indication that she was unaware of the objectives expected of her. Nor is there evidence that she was afforded insufficient opportunity to attain them. As to the children presently in her home, we find no error by the trial court in failing to consider this fact. It is the children herein named with whom we are concerned in addressing the issues before us.

Accordingly, we hold the record to support by a preponderance of the evidence the trial court's decision to terminate the parental rights of the appellant as to the children herein identified. Costs are taxed to the appellant, for which execution may issue if necessary.

_____
FARMER, J.

_____
CRAWFORD, P.J., W.S. (Concurs)

_____

HIGHERS, J. (Concurs)