IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
AUGUST 29, 2001 Session

## SCARLETT MARIE SPENCER & PATRICK MENEES SPENCER v. JAMES JUSTIN AYDLOTTE

**Direct Appeal from the Chancery Court for Gibson County**
**No. 14944; The Honorable George R. Ellis, Chancellor**

_____

**No. W2001-00995-COA-R3-CV - Filed December 28, 2001**

_____

This is a suit for the termination of parental rights. The Appellants filed a petition in the Chancery Court of Gibson County to terminate the Appellee's parental rights to his child. Following a hearing, the trial court entered an order denying the Appellants' petition. The Appellants appeal the trial court's order denying the Appellants' petition to terminate the Appellee's parental rights. For the reasons stated herein, we affirm the trial court's decision.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY KIRBY LILLARD, J., joined.

L. L. Harrell, Jr., Trenton, TN, for Appellants

Jeffrey A. Smith, Trenton, TN, for Appellee

**OPINION**

**I. Facts and Procedural History**

The Appellant, Scarlett Marie Spencer ("Mrs. Spencer"), and the Appellee, James Justin Aydlotte ("Mr. Aydlotte"), are the natural parents of James Landon Aydlotte ("Landon"), born April 5, 1996. Mrs. Spencer and Mr. Aydlotte were never married, and Landon was legitimated by action of the Juvenile Court of Gibson County on April 16, 1996. On April 23, 1999, Mrs. Spencer married the Appellant, Patrick Menees Spencer ("Mr. Spencer").

On June 20, 2000, Mr. Aydlotte filed a petition in the Juvenile Court of Gibson County to establish parentage and for specific visitation.[1] On June 21, 2000, Mr. and Mrs. Spencer filed a petition to terminate parental rights and for Mr. Spencer to adopt Landon. The petition alleged that Mr. Aydlotte abandoned Landon in that, for a period of four months immediately preceding the filing of the petition, Mr. Aydlotte willfully failed to visit or support Landon. On July 14, 2000, Mr. Aydlotte filed a motion for specific visitation in the Juvenile Court of Gibson County. On August 2, 2000, Mr. Aydlotte filed a response to the petition to terminate parental rights and for adoption. Mr. Aydlotte admitted that he had failed to visit or support Landon for the four months immediately preceding the filing of the petition. Mr. Aydlotte claimed, however, that Mrs. Spencer refused to allow Mr. Aydlotte to visit Landon and refused to accept child support. On August 7, 2000, the Juvenile Court of Gibson County entered an order transferring the motion for specific visitation to the Chancery Court of Gibson County for consolidation with the hearing on the petition to terminate parental rights and for adoption.

The hearing on the petition to terminate parental rights and for adoption was held on November 21, 2000. On December 28, 2000, the trial court entered an order denying the petition. The trial court stated that while Mr. Aydlotte "has not pursued his parental rights as aggressively as he should have, the Plaintiffs have failed to show by clear and convincing evidence that James Justin Aydlotte has engaged in conduct that evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child." The trial court also found that it did not have jurisdiction to hear the motion for specific visitation. This appeal followed.

## II. Standard of Review

Parents have a fundamental right to the care, custody, and control of their children. See Stanley v. Illinois, 405 U.S. 645, 651 (1972). This right is not absolute, however, and parental rights may be terminated upon a finding by clear and convincing evidence that the grounds for termination of parental rights have been established and that termination is in the best interest of the child. See TENN. CODE ANN. § 36-1- 113(c) (2000). Clear and convincing evidence is evidence which "eliminates any serious or substantial doubt concerning the correctness of the conclusion to be drawn from the evidence. It should produce in the factfinder's mind a firm belief or conviction with regard to the truth of the allegations sought to be established." O'Daniel v. Messier, 905 S.W.2d 182, 188 (Tenn. Ct. App. 1995) (citations omitted).

Under this heightened standard of review, we must first review the trial court's findings in accordance with section 13(d) of the Tennessee Rules of Appellate Procedure. That review is *de novo* with a presumption of correctness as to the trial court's factual findings, unless the preponderance of the evidence is otherwise. See TENN. R. APP. P. 13(d). For issues of law, the standard of review is *de novo*, with no presumption of correctness. See Ridings v. Ralph M. Parsons Co., 914 S.W.2d 79, 80 (Tenn. 1996). We must then determine whether the facts make out a clear

---

[1] Upon learning that an order had previously been entered finding Mr. Aydlotte to be the father of Landon, Mr. Aydlotte dismissed the petition by an agreed order entered on July 25, 2000.

and convincing case in favor of terminating parental rights.  See In re Drinnon, 776 S.W.2d 96, 100 (Tenn. Ct. App. 1988).

## III.  Law and Analysis

The sole issue presented for our review is whether the trial court erred by denying the petition to terminate parental rights.  In order to terminate parental rights, the court must find by clear and convincing evidence that grounds for termination, as set forth by section 36-1-113(g) of the Tennessee Code, have been established, and the court must determine that termination is in the best interest of the child.  See TENN. CODE ANN. § 36-1-113(c) (2000).  As pertinent in the case at bar, section 36-1-113(g) of the Tennessee Code provides that a termination of parental rights may be based upon the ground of abandonment pursuant to section 36-1-113(g)(1).  See TENN. CODE ANN. § 36-1-113(g)(1) (2000).  In the present case, therefore, we must reverse the trial court's judgment denying the petition to terminate parental rights if the record contains clear and convincing evidence to support abandonment and if termination is in the best interest of the child.

Under the provisions of section 36-1-113(g)(1), termination of parental rights may be based upon a parent's abandonment of his or her child.  See TENN. CODE ANN. § 36-1-113(g)(1).  Section 36-1-102 of the Tennessee Code defines abandonment, for purposes of terminating parental rights, as:

> (1)(A)(i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or make reasonable payments toward the support of the child;
> (B) For purposes of this subdivision (1), "token support" means that the support, under the circumstances of the individual case, is insignificant given the parent's means;
>
> (C) For purposes of this subdivision (1), "token visitation" means that the visitation, under the circumstances of the individual case, constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child;
>
> (D) For purposes of this subdivision (1), "willfully failed to support" or "willfully failed to make reasonable payments toward such child's support" means that, for a period of four (4) consecutive months, no monetary support was paid

or that the amount of support paid is token support;

> (E) For purposes of this subdivision (1), "willfully failed to visit" means the willful failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation.

TENN. CODE ANN. § 36-1-102(1)(A)-(E) (2000).

In In re Swanson, 2 S.W.3d 180 (Tenn. 1999), the Tennessee Supreme Court found the above definitions of "willfully failed to support" and "willfully failed to make reasonable payments toward such child's support" to be unconstitutional because they "in effect create an irrebuttable presumption that the failure to provide monetary support for the four months preceding the petition to terminate parental rights constitutes abandonment, irrespective of whether that failure was intentional." Id. at 188. The Swanson court held that the definition as it existed under the prior statute should be applied until the legislature amends the statute. See id. at 189. "Under the prior statute, the definition of 'abandoned child' contained an element of intent both in failures to visit and failures to support." Id. at 189 n.14 (citing TENN. CODE ANN. § 36-1-102(1)(A)(i) (Supp. 1994)).

Tennessee courts have defined abandonment as "any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child." Ex parte Wolfenden, 348 S.W.2d 751, 755 (Tenn. Ct. App. 1961) (citations omitted). The evidence of abandonment must show "an actual desertion, accompanied with an intention to entirely sever, so far as it is possible to do so, the parental relationship and throw off all obligations growing out of the same." Fancher v. Mann, 432 S.W.2d 63, 65 (Tenn. Ct. App. 1968) (citation omitted). Abandonment may be found only when, given the benefit of every controverted fact, an inference of abandonment follows as a matter of law. See id. at 66.

The case at bar is analogous to In re Adoption of Self, 836 S.W.2d 581 (Tenn. Ct. App. 1992). In Self, this Court considered the issue whether the trial court erred by terminating the parental rights of a father to his minor child. See id. at 582. The trial court found that the father abandoned the child based on his failure to pay child support or exercise visitation for four years. See id. This Court reversed the trial court's finding of abandonment based upon evidence in the record that the mother made it difficult for both the father and his parents to visit with the child. See id. at 583. The record also indicated that the mother refused to allow the father to exercise visitation due to his failure to pay child support. See id. at 584. This Court noted that the testimony as to visitation or attempted visitation was highly controverted. See id. This Court concluded that the evidence of abandonment was not clear and convincing, and "[w]hile the record is clear that [the father] has not been a good parent in many respects, it does not support a finding of abandonment as defined by the courts in this state." Id.

The record before us indicates that Mr. Aydlotte failed to pay child support since November 2, 1996 and failed to visit with Landon since April 6, 1998. The testimony at the hearing was

controverted, however, as to whether Mrs. Spencer thwarted Mr. Aydlotte from paying child support and visiting with Landon. Mrs. Spencer testified that she told Mr. Aydlotte that he did not have to pay child support if he thought she was using the money for her personal use. Mrs. Spencer testified that Mr. Aydlotte stopped paying child support shortly thereafter. Mrs. Spencer further testified that Mr. Aydlotte called her on December 26, 1998 and wanted to bring Christmas gifts to Landon. Mrs. Spencer stated the following:

> he asked when would be an appropriate time for him to bring Landon his gifts. And I told him that there wasn't going to be an appropriate time, that if he wanted to come and see the child and be a part of the child's life, that he could do that by calling and start sending child support again, and then we would work out something as far as visitation, but that he wasn't going to show up on Christmas and birthdays.

Mrs. Spencer testified that she had no contact with Mr. Aydlotte following the December 26, 1998 phone conversation.

Mr. Aydlotte testified that Mrs. Spencer told him she no longer wanted him to pay child support. Mr. Aydlotte testified, however, that paying child support was not made a condition of visiting Landon by Mrs. Spencer. Mr. Aydlotte testified that visitation with Landon took place at Mrs. Spencer's home. Mr. Aydlotte testified that Mrs. Spencer refused to allow him to take Landon to his home for visitation. Mr. Aydlotte further testified that, prior to April 6, 1998, Mrs. Spencer either refused his requests to visit with Landon or told Mr. Aydlotte that "they had something else to do." Mr. Aydlotte testified that he never desired to terminate his parental rights or abandon Landon.

Mr. Aydlotte's mother, Lynn Elliot ("Ms. Elliot"), testified that Mrs. Spencer refused Mr. Aydlotte's requests to take Landon to his home for visitation. Ms. Elliot testified that Mrs. Spencer eventually refused to allow Mr. Aydlotte to visit with Landon. Ms. Elliot testified that in order for Mr. Aydlotte to be allowed to visit with Landon, Mrs. Spencer said that he would have to pay child support.

From our review of the record, we agree with the trial court's statement that Mr. Aydlotte "has not pursued his parental rights as aggressively as he should have." Nevertheless, Mr. Aydlotte and Ms. Elliot testified at the hearing that Mrs. Spencer thwarted Mr. Aydlotte's contact with Landon by refusing child support payments and refusing visitation. Ms. Elliot testified that Mrs. Spencer made visitation conditional upon Mr. Aydlotte paying child support. Giving Mr. Aydlotte the benefit of every controverted fact, we find that Mr. and Mrs. Spencer failed to establish by clear and convincing evidence that Mr. Aydlotte engaged in conduct "which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child." The record fails to support a finding of abandonment as defined by the courts in this state. Accordingly, we affirm the trial court's decision.

## IV.  Conclusion

For the foregoing reasons, the decision of the trial court is affirmed.  Costs of this appeal are taxed against the Appellants, Scarlett Marie Spencer and Patrick Menees Spencer, and their surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE