IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 4, 2005

IN RE H.A.L.

Appeal from the Juvenile Court for White County
No. JU 1519    Sam Benningfield, Judge

No. M2005-00045-COA-R3-PT - Filed April 25, 2005

This appeal involves the parental rights of a father who has been incarcerated off and on for most of this fourteen-year-old daughter's life. The Tennessee Department of Children's Services filed a petition to terminate the father's parental rights in the White County Juvenile Court while he was serving a fifteen-year-sentence for first degree robbery. The juvenile court, relying on the grounds contained in Tenn. Code Ann. §§ 36-1-113(g)(1), (3), (9) (Supp. 2004), terminated the father's parental rights. The father has appealed. We have determined that the Department has presented clear and convincing evidence that the father abandoned his daughter as proscribed by Tenn. Code Ann. § 36-1-102(1)(A)(iv) (Supp. 2004), that he failed to remedy conditions as required by Tenn. Code Ann. § 36-1-113(g)(3)(A), and that terminating his parental rights is in his daughter's best interests. Accordingly, we affirm the order terminating the father's parental rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which PATRICIA J. COTTRELL, J., joined. WILLIAM B. CAIN, J., filed a separate concurring opinion.

Billy K. Tollison, III, Sparta, Tennessee, for the appellant, R.W.L.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; and Michael B. Schwegler, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

**OPINION**

**I.**

K.L.K.W.S.C. ("K.L.C.") was carrying on an extramarital relationship with R.W.L. On January 28, 1990, she gave birth to H.A.L. and listed R.W.L. as her daughter's biological father. K.L.C. had custody of H.A.L. for the first two and one-half years of her life, and R.W.L. visited the child approximately two times per month and on occasion provided K.L.C. with money to support H.A.L. Sometime in 1993, K.L.C. decided that she could no longer care for H.A.L. and agreed to

let R.W.L. have custody of their daughter. According to R.W.L., he legitimated H.A.L. in a 1993 proceeding at the Rutherford County Juvenile Court in Murfreesboro, Tennessee.[1] He asserts that he was granted full custody of H.A.L. in this proceeding.

R.W.L. has lived a life of crime, fueled by his drug addiction, for most of H.A.L.'s life. In 1995, he was incarcerated for 120 days in the Murfreesboro jail.[2] Apparently during this time, R.W.L. arranged for H.A.L. to live with her paternal aunt and uncle. Upon his release from jail in November 1995, R.W.L. resumed using drugs, violated his parole, and was again incarcerated. He continued to use drugs following his release and was soon arrested for forgery. In June 1996, R.W.L began serving a two-year sentence for forgery. H.A.L.'s aunt and uncle brought H.A.L. to the jail to visit R.W.L. from time to time; however these visits ended sometime in 1997.

In 1998, the Tennessee Department of Children's Services received a complaint that H.A.L. was being sexually abused by her aunt and uncle. The Department removed H.A.L. from her aunt and uncle's home and placed her in her mother's custody. On September 15, 1998, the Department then filed a petition in the White County Juvenile Court seeking a "no contact" order to prevent H.A.L.'s aunt and uncle from contacting her. The Department's petition also alleged that H.A.L. feared R.W.L., because he had recently been released from the workhouse and was making threats towards her and her mother. The Department requested that R.W.L. be prevented from contacting H.A.L. The court immediately granted the Department's petition on all grounds and placed H.A.L. in protective custody. The juvenile court permitted H.A.L. to continue living with her mother, but required K.L.C. not to allow R.W.L. or H.A.L.'s aunt or uncle to contact her.

K.L.C. experienced severe difficulties with H.A.L.'s integration into her home after the court issued the "no contact" order. K.L.C. had two other children living with her at the time, and H.A.L. began engaging in sexual conduct with one of the children. In November 1998, the Department, at her mother's request, removed H.A.L. from her mother's home.[3]

During this time, R.W.L. was not incarcerated and had a full-time job. He adhered to the "no contact" order and did not attempt to have it modified or set aside. He also continued using drugs, and in September 1999, he was arrested for first degree robbery and for evading police in various counties of Kentucky. He remained in custody from September 2, 1999 until his trial, and he was eventually convicted of first degree robbery and sentenced to fifteen years in prison.

H.A.L. remained in the Department's custody until September 2001, when the Department attempted to return H.A.L. to her mother. This placement proved to be short-lived, and H.A.L. was returned to the Department's custody in February 2002 after she was found to be dependent and

---

[1]The record does not contain any transcripts or court orders from this proceeding, and R.W.L. has been unable to pinpoint any dates, judges, or lawyers associated with these proceedings.

[2]The record does not clearly establish the reasons for R.W.L.'s incarceration.

[3]It is unclear where the Department placed H.A.L. after taking custody of her.

neglected. In October 2003, the Department filed a petition in the White County Juvenile Court to terminate K.L.C.'s parental rights to H.A.L. and K.L.C.'s other children, as well as the parental rights of all of the children's fathers, including R.W.L. The next month, R.W.L. filed a motion to dismiss the 1998 "no contact" order.

The juvenile court heard the Department's petition on March 9, 2004. Because R.W.L. was incarcerated in Kentucky, he participated in the trial by telephone in accordance with Tenn. Code Ann. § 36-1-113(f)(3).[4] He testified at the hearing that his many arrests were due to his continual drug abuse, and he admitted that he abused drugs whenever he was not incarcerated. R.W.L. stated that he had enrolled in a drug program a few days before the trial and that there was a ninety-eight percent chance that he would be granted parole in August 2004. He also testified that he had not seen H.A.L. for seven years and that they do not know one another. The juvenile court took the case under advisement at the close of the hearing.

In September 2004, the juvenile court issued an order terminating all of the parental rights of all the biological parents of K.L.C.'s three children, including H.A.L.[5] With respect to R.W.L., the trial court found that he had abandoned H.A.L., that he failed to remedy the conditions which led to her removal, and that he failed to remedy other conditions which in all reasonable probability would subject H.A.L. to further abuse or neglect. The court also found that grounds existed under Tenn. Code Ann. § 36-1-113(g)(9) to support termination. The court then concluded that it was in H.A.L.'s best interests that R.W.L.'s parental rights be terminated. R.W.L. has appealed.

## II.
### THE STANDARDS FOR REVIEWING TERMINATION ORDERS

A biological parent's right[6] to the care and custody of his or her child is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and

---

[4] Tenn. Code Ann. § 36-1-113(f)(3) states, in part:

the incarcerated parent or guardian has the right to participate in the hearing and contest the allegation that the rights of the incarcerated parent or guardian should be terminated, and, at the discretion of the court, such participation may be achieved through personal appearance, teleconference, telecommunication or other means deemed by the court to be appropriate under the circumstances. . ..

[5] Only R.W.L.'s parental rights to H.A.L. are at issue in this appeal.

[6] This right exists notwithstanding the marital status of the child's biological parents where a biological parent has established or is attempting to establish a relationship with the child. *Lehr v. Robertson*, 463 U.S. 248, 262, 103 S. Ct. 2985, 2993-94 (1983); *In re D.A.H.*, 142 S.W.3d 267, 274 (Tenn. 2004); *Jones v. Garrett*, 92 S.W.3d 835, 840 (Tenn. 2002); *In re Swanson*, 2 S.W.3d 180, 188 n.12 (Tenn. 1999). The right also extends to adoptive parents. *Simmons v. Simmons*, 900 S.W.2d 682, 684 (Tenn. 1995).

state constitutions.[7] *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 2059-60 (2000); *Hawk v. Hawk*, 855 S.W.2d 573, 578-79 (Tenn. 1993); *Ray v. Ray*, 83 S.W.3d 726, 731 (Tenn. Ct. App. 2001). While this right is fundamental and superior to the claims of other persons and the government, it is not absolute. *State v. C.H.K.*, 154 S.W.3d 586, 589 (Tenn. Ct. App. 2004). It continues without interruption only as long as a parent has not relinquished it, abandoned it, or engaged in conduct requiring its limitation or termination. *Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002); *In re S.M.*, 149 S.W.3d 632, 638 (Tenn. Ct. App. 2004); *In re M.J.B.*, 140 S.W.3d 643, 652-53 (Tenn. Ct. App. 2004).

Termination proceedings in Tennessee are governed by statute. Parties who have standing to seek the termination of a biological parent's parental rights must prove two things. First, they must prove the existence of at least one of the statutory grounds for termination.[8] Tenn. Code Ann. § 36-1-113(c)(1); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *Jones v. Garrett*, 92 S.W.3d at 838. Second, they must prove that terminating the parent's parental rights is in the child's best interests.[9] Tenn. Code Ann. § 36-1-113(c)(2); *In re A.W.*, 114 S.W.3d 541, 545 (Tenn. Ct. App. 2003); *In re C.W.W.*, 37 S.W.3d 467, 475-76 (Tenn. Ct. App. 2000); *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998).

No civil action carries with it graver consequences than a petition to sever family ties irretrievably and forever. Tenn. Code Ann. § 36-1-113(i)(1); *M.L.B. v. S.L.J.*, 519 U.S. 102, 119, 117 S. Ct. 555, 565 (1996); *In re Knott*, 138 Tenn. 349, 355, 197 S.W. 1097, 1098 (1917); *In re D.D.K.*, No. M2003-01016-COA-R3-PT, 2003 WL 23093929, at *8 (Tenn. Ct. App. Dec. 30, 2003) (No Tenn. R. App. P. 11 application filed). Because the stakes are so profoundly high, Tenn. Code Ann. § 36-1-113(c)(1) requires persons seeking to terminate a biological parent's parental rights to prove the statutory grounds for termination by clear and convincing evidence. This heightened burden of proof minimizes the risk of erroneous decisions. *In re C.W.W.*, 37 S.W.3d at 474; *In re M.W.A., Jr.*, 980 S.W.2d at 622. Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable, *State v. Demarr*, No. M2002-02603-COA-R3-JV, 2003 WL 21946726, at *9 (Tenn. Ct. App. Aug. 13, 2003) (No Tenn. R. App. P. 11 application filed), and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002); *In re S.M.*, 149 S.W.3d at 639; *In re J.J.C.*, 148 S.W.3d 919, 925 (Tenn. Ct. App. 2004). It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established. *In re A.D.A.*, 84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d at 733; *In re C.W.W.*, 37 S.W.3d at 474.

---

[7]U.S. Const. amend. XIV, § 1; Tenn. Const. art. I, § 8.

[8]The statutory grounds for terminating parental rights are found in Tenn. Code Ann. § 36-1-113(g).

[9]The factors to be considered in a "best interests" analysis are found in Tenn. Code Ann. § 36-1-113(i).

Because of the gravity of their consequences, proceedings to terminate parental rights require individualized decision making. *In re Swanson*, 2 S.W.3d at 188. Accordingly, Tenn. Code Ann. § 36-1-113(k) explicitly requires courts terminating parental rights to "enter written orders containing specific findings of fact and conclusions of law" whether they have been requested to do so or not. *In re S.M.*, 149 S.W.3d at 639; *In re M.J.B.*, 140 S.W.3d at 653-54. These specific findings of fact and conclusions of law facilitate appellate review and promote just and speedy resolution of appeals. When a lower court has failed to comply with Tenn. Code Ann. § 36-1-113(k), the appellate courts must remand the case with directions to prepare the required findings of fact and conclusions of law. *In re D.L.B.*, 118 S.W.3d at 367; *In re K.N.R.*, No. M2003-01301-COA-R3-PT, 2003 WL 22999427, at *5 (Tenn. Ct. App. Dec. 23, 2003) (No Tenn. R. App. P. 11 application filed).

The heightened burden of proof required by Tenn. Code Ann. § 36-1-113(c)(1) requires us to adapt Tenn. R. App. P. 13(d)'s customary standard of review for cases of this sort. First, we must review the trial court's specific findings of fact de novo in accordance with Tenn. R. App. P. 13(d). Thus, each of the trial court's specific factual findings will be presumed to be correct unless the evidence preponderates otherwise. Second, we must determine whether the facts, either as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements required to terminate a biological parent's parental rights. *Jones v. Garrett*, 92 S.W.3d at 838; *In re Valentine*, 79 S.W.3d at 548-49; *In re S.M.*, 149 S.W.3d at 640; *In re M.J.B.*, 140 S.W.3d at 654.[10]

## III.
### THE ADEQUACY OF THE DEPARTMENT'S EVIDENCE OF ABANDONMENT

R.W.L. takes issue with the trial court's conclusion that he abandoned his daughter. In its September 2004 order, the court, focusing on the four months immediately preceding R.W.L.'s incarceration in Kentucky, found that R.W.L. had abandoned H.A.L. by failing to visit her, by failing to pay child support, and by showing a wanton disregard for her welfare.[11] While we disagree with the trial court's conclusions with respect to visitation and child support, we have concluded that the Department produced clear and convincing evidence that R.W.L. abandoned his daughter by showing a wanton disregard for her welfare.

---

[10]These decisions draw a distinction between specific facts and the combined weight of these facts. Tenn. R. App. P. 13(d) requires us to defer to the trial court's specific findings of fact as long as they are supported by a preponderance of the evidence. However, we are the ones who must then determine whether the combined weight of these facts provides clear and convincing evidence supporting the trial court's ultimate factual conclusion. The Tennessee Supreme Court used this approach in *In re Valentine* when it recognized the difference between the conclusion that a biological parent had not complied substantially with her obligations in a permanency plan and the facts relied upon by the trial court to support this conclusion. *In re Valentine*, 79 S.W.3d at 548-49; *see also Jones v. Garrett*, 92 S.W.3d at 838-39.

[11]*See* Tenn. Code Ann. § 36-1-102(1)(A)(iv).

In most termination cases, the pertinent time period in determining whether a parent has abandoned his or her child by willfully failing to visit or pay child support is the four consecutive months immediately preceding the filing of a termination proceeding. *See* Tenn. Code. Ann. § 36-1-102(1)(A)(i). However, if a parent has been incarcerated during this four month time period, then the definition of "abandonment" found in Tenn. Code Ann. § 36-1-113(1)(A)(iv) will apply:

> [Abandonment means that a] parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration which exhibits a wanton disregard for the welfare of the child.

Because R.W.L. began serving his fifteen-year sentence in 1999 and the Department filed its termination petition in 2003, this definition of "abandonment" applies to R.W.L.'s case.

### A.
### Abandonment By Willfully Failing To Visit

A parent's failure to visit a child may provide grounds for terminating the parent's parental rights, but only if the parent's failure to visit was "willful." Tenn. Code Ann. § 36-1-102(1)(E) defines "willfully failed to visit" as "the willful failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation." Token visitation, as defined by Tenn. Code Ann. § 36-1-102(1)(C), means "that the visitation, under the circumstances of the individual case, constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child."

The trial court decided that R.W.L. willfully failed to visit his daughter during the four months immediately preceding his incarceration in Kentucky because he did not attempt to seek judicial relief from the 1998 "no contact" order. We disagree with the juvenile court's reasoning. The statutory definition of abandonment does not encompass failing to challenge a facially valid "no contact" order. R.W.L.'s failure to visit with H.A.L. was not willful because he had been ordered to have no contact with her. Therefore, we find that the Department failed to present clear and convincing evidence that R.W.L. had willfully failed to visit his daughter, and the juvenile court erred by concluding that R.W.L. had abandoned his daughter by willfully failing to visit her.

**B.**
**Abandonment By Willfully Failing To Support**

A parent's failure to support a child financially may also provide grounds for terminating the parent's parental rights, but only if the parent's failure to support was "willful." Tenn. Code Ann. § 36-1-102(1)(A)(i). Tenn. Code Ann. § 36-1-102(1)(D) defines "willfully failed to support" as the "willful failure, for a period of four (4) consecutive months, to provide monetary support or the willful failure to provide more than token payments toward the support of the child." Token support, as defined by Tenn. Code Ann. § 36-1-102(1)(B), means "that the support, under the circumstances of the individual case, is insignificant given the parent's means." A parent's ability to pay support[12] is a factor in determining willfulness. *Department of Children's Servs. v. Lewis*, No. M2001-02729-COA-R3-JV, 2003 WL 22037399, at \*52 (Tenn. Ct. App. Aug. 29, 2003) (No Tenn. R. App. P. 11 application filed).

All parents have an obligation to support their children. *In re M.J.B.*, 140 S.W.3d at 655. This obligation continues until the child reaches the age of majority, Tenn. Code Ann. § 34-1-102(a), (b) (2001), and it may even continue after the Department has taken custody of the child. Tenn. Code Ann. § 37-1-151 (Supp. 2004) (permitting juvenile courts to require parents to support children in the State's custody if the parents are able to contribute to the support of the child). However, as we have recently noted:

> [W]hen parents no longer have custody of their children, the nature and extent of their duty may be defined and controlled by external factors other than the parents' ability to support. In these circumstances, the nature and extent of the duty to support may be based on a court order defining the support obligation. When a child has been placed in the Department's custody in a dependent-neglect proceeding, a parent's support obligation may also be defined by the permanency plan for the child.

*In re M.J.B.*, 140 S.W.3d at 655.

The juvenile court did not order R.W.L. to pay child support when it removed H.A.L. from R.W.L.'s custody and issued its no contact order. In fact, the appellate record does not reveal that any court has ordered R.W.L. to pay child support or even that the Department has entered into a permanency plan with R.W.L. that required him to pay child support.[13] The best explanation for the juvenile court's and the Department's failure to define R.W.L.'s child support obligations is that

---

[12]A parent who fails to support a child because he or she is financially unable to do so is not willfully failing to support the child. *In re F.R.R., III,* No. M2004-02208-COA-R3-PT, 2005 WL 473470, \*4 n.6 (Tenn. Ct. App. Mar. 1, 2005)*; O'Daniel v. Messier*, 905 S.W.2d 182, 188 (Tenn. Ct. App. 1995); *Pierce v. Bechtold*, 60 Tenn. App. 478, 487, 448 S.W.2d 425, 429 (1969).

[13]The record is silent as to why the Department never entered into a permanency plan with R.W.L.

R.W.L. had been released from the workhouse only days before the "no contact" order was issued and most likely had no ability to pay child support.

The Department presented some evidence that R.W.L. held down some sort of employment between September 1998 and September 1999; however, the Department produced no evidence of R.W.L.'s income and expenses during that period or of his financial ability to pay child support. In the absence of any evidence regarding R.W.L.'s ability to pay child support during the four months immediately preceding his incarceration or of any indication that either the Department or the court had required him to pay child support, the record lacks clear and convincing evidence that R.W.L. willfully failed to support H.A.L. during the four months immediately preceding his current incarceration.

## C.
### Abandonment by Wanton Disregard for the Child's Welfare

An incarcerated parent may also abandon his or her child by showing wanton disregard for the child's welfare during the four consecutive months immediately preceding that parent's incarceration. Tenn. Code Ann. § 36-1-102(1)(A)(iv). While the statute does not explicitly define "wanton disregard," Tennessee's courts have repeatedly found that a parent's drug abuse and criminal activity constitutes a wanton disregard for the welfare of that parent's child. As this court has recently stated, "an incarcerated parent who has multiple drug offenses and wastes the opportunity to rehabilitate themselves by continuing to abuse drugs, resulting in revocation of their parole and reincarceration, constitutes abandonment of the child, and demonstrates a wanton disregard for the welfare of the child." *State Dep't of Children's Servs. v. J.M.F.,* No. E2003-03081-COA-R3-PT, 2005 WL 94465, at *7 (Tenn. Ct. App. Jan. 11, 2005) *perm. app. denied* (Tenn. Mar. 21, 2005).

In a case similar to R.W.L.'s, this court held that a father's conduct demonstrated his wanton disregard for the welfare of his children when the father "admitted that he was addicted to cocaine and that his need for money to support his habit led him to commit several burglaries and thefts," which resulted in his incarceration. *State Dep't of Children's Services v. Wiley*, No. E1999-01216-COA-R3-CV, 1999 WL 1068726, at *7 (Tenn. Ct. App. Nov. 24, 1999), *perm. app. denied* (Tenn. Apr. 24, 2000). *See State Dep't of Children's Servs. v. F. E. B*., No. E2001-00942-COA-R3-JV, 2003 WL 296185, at *3 (Tenn. Ct. App. Feb. 12, 2003) (No Tenn. R. App. P. 11 application filed) ("a parent's drug abuse and criminal activity constitute conduct which exhibits a wanton disregard for the welfare of the parent's child"); *In re C.W.W.*, 37 S.W.3d 467, 475 (Tenn. Ct. App., 2000) ("a parent's drug habit and related criminal activity constituted conduct exhibiting a wanton disregard for the parent's children"); *In re Shipley*, No. 03A01-9611-JV-00369, 1997 WL 596281, at *5 (Tenn. Ct. App. Sept. 29, 1997) (No Tenn. R. App. P. 11 application filed) (father's criminal conduct, coupled with his drug and alcohol problems, showed a wanton disregard for the welfare of his children prior to his incarceration).

R.W.L. has been in and out of either jail or prison for most of H.A.L.'s life. He had spent several weekends in jail before H.A.L. had even turned five years old. As H.A.L. grew older, R.W.L.'s sentences grew longer. He spent 120 days in jail between the later part of 1995 and the beginning of 1996. He received a two-year sentence in 1996 that kept him incarcerated until 1998. Then in September 1999, he received another fifteen-year sentence and has been incarcerated since the day of his arrest. H.A.L. is currently fifteen years old, and R.W.L. has been incarcerated for over one-half of her life. He may very well continue to be incarcerated until well after H.A.L. turns eighteen.

R.W.L. attributes his criminal conduct to his drug addiction. He conceded during the trial that he took advantage of the opportunity to abuse drugs when he was not incarcerated, rather than taking advantage of the opportunity to father his daughter. R.W.L.'s actions show nothing but a wanton disregard for H.A.L.'s welfare. For this reason, we agree with the trial court's conclusion that R.W.L. abandoned his daughter by showing a wanton disregard for her welfare during the four months immediately preceding in his incarceration.

## IV.
### FAILURE TO REMEDY CONDITIONS

R.W.L. next takes issue with the juvenile court's conclusion that his parental rights should be terminated because he failed to remedy the conditions that caused the Department to remove H.A.L. from his custody and because he has failed to remedy other conditions which, in all reasonable probability, would subject H.A.L. to further abuse or neglect.[14] The juvenile court found that these conditions make it unlikely that H.A.L. could be returned to R.W.L. in the near future and impair H.A.L.'s chances of early integration into a safe, stable, and permanent home. *See* Tenn. Code Ann. § 36-1-113(g)(3)(A).

The trial court based its findings on R.W.L.'s continued incarceration, his drug usage, and his lack of stability. For that reason, R.W.L. and the Department focus most of their argument on R.W.L.'s incarceration and drug usage. R.W.L. argues that he has taken steps to make himself eligible for parole by enrolling in prison programs to address his drug addiction and other issues in

---

[14]Tenn. Code Ann. § 36-1-113(g)(3)(A) sets forth the following grounds for terminating a parent's parental rights:

> The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and: (i) The conditions which led to the child's removal or other conditions which in all reasonable probability would cause the child to be subjected to further abuse or neglect and which, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist; (ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and (iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

his life.  The Department argues that R.W.L. has taken little action to distance himself from a life of crime and has not taken sufficient action to remedy his pattern of drug-use and instability.

The focus on R.W.L.'s incarceration is misplaced with regard to his failure to remedy the conditions that led to H.A.L.'s removal from R.W.L.'s home.  The factor that led to H.A.L.'s removal was the sexual abuse by H.A.L.'s aunt and uncle.  It was for this reason that the Department put H.A.L. into protective custody and into the care of her mother in September 1998.  This condition has clearly been remedied because H.A.L. has been removed from her aunt and uncle's custody, and her aunt and uncle have been under a "no contact" order since 1998.  The Department has presented no evidence that the aunt or uncle have violated this order or that they have ever attempted to contact H.A.L. since the order was issued.  Therefore, we find that the court erred in finding that R.W.L. failed to remedy the conditions that lead to H.A.L.'s removal from his home.

The persistence of other conditions that in all reasonable probability would cause H.A.L. to be subjected to further abuse or neglect and that prevent H.A.L.'s safe return to R.W.L.'s care is another matter.  R.W.L.'s incarceration is a significant factor with regard to this ground.  This court has stated that a father's "recurrent drug problems, coupled with his criminal activity, is significant evidence to show that all of the conditions set forth in T.C.A. § 36-1-113(g)(3)(A) were met." *State v. Wiley*, 1999 WL 1068726, at *7.  In terminating the father's parental rights, this court reasoned that:

> [the] father was in prison at the time of trial . . ..  Although that sentence may be reduced for good behavior, the actual date of his parole is not certain.  The proof is clear and convincing in this case that the children cannot rely upon the availability of [their] Father to provide them "a safe, stable and permanent home."

*State v. Wiley*, 1999 WL 1068726, at *6.

The Department offered clear and convincing evidence that R.W.L. is in prison and cannot provide a home or care for H.A.L. while he is incarcerated.  R.W.L. has offered no proof as to who would care for H.A.L., support her, or provide her a home if she were returned to him.  He has never identified any relatives other than H.A.L.'s abusive aunt and uncle who could assist him with her care. Further, the Department offered clear and convincing evidence that these conditions would not be remedied at an early date so that H.A.L. may be returned to R.W.L.'s care because R.W.L.'s sentence will last longer than the remainder of H.A.L.'s minority.  Despite R.W.L.'s assertion that there was a ninety-eight percent change that he would be granted parole in 2004, he failed to offer conclusive proof that he would definitely be granted parole from his fifteen-year sentence.  Based on these factors, we agree with the trial court's conclusion that R.W.L.'s parental rights may be terminated based upon Tenn. Code Ann. § 36-1-113(g)(3)(A).

R.W.L. finally asserts that the trial court erred by terminating his parental rights pursuant to Tenn. Code Ann. § 36-1-113(g)(9). He argues that Tenn. Code Ann. § 36-1-113(g)(9) applies only to parents who are not the legal parents of their children and that the Department has failed to prove by clear and convincing evidence that he is not the legal father of H.A.L. We agree. The Department failed to present reasonably available evidence to rebut R.W.L.'s assertion that he had been declared to be H.A.L.'s legal parent in earlier proceedings in Rutherford County.

Tenn. Code Ann § 36-1-113(g)(9) establishes the following grounds for termination:

> (i) The person has failed, without good cause or excuse, to pay a reasonable share of prenatal, natal, and postnatal expenses involving the birth of the child in accordance with the person's financial means promptly upon the person's receipt of notice of the child's impending birth; (ii) The person has failed, without good cause or excuse, to make reasonable and consistent payments for the support of the child in accordance with the child support guidelines promulgated by the department pursuant to § 36-5-101; (iii) The person has failed to seek reasonable visitation with the child, and if visitation has been granted, has failed to visit altogether, or has engaged in only token visitation, as defined in § 36-1-102(1)(C); (iv) The person has failed to manifest an ability and willingness to assume legal and physical custody of the child; (v) Placing custody of the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child; or (vi) The person has failed to file a petition to establish paternity of the child within thirty (30) days after notice of alleged paternity by the child's mother, or as required in § 36-2-318(j), or after making a claim of paternity pursuant to § 36-1-117(c)(3).

These grounds are less difficult to prove than the grounds in Tenn. Code Ann. § 36-1-113(g)(1)-(8), *In re S.M.F.*, No. M2004-00876-COA-R9-PT, 2004 WL 2804892, at *6 (Tenn. Ct. App. Dec. 6, 2004) (No Tenn. R. App. P. 11 application filed), partially because they do not include a willfulness requirement. In deciding if these grounds apply to a parent whose rights are subject to termination, the pivotal issue is whether the parent is a "legal parent." *In re S.M.*, 149 S.W.3d at 640-41. As this court recently explained:

> For the purpose of the termination statutes, a "legal parent" includes a child's biological mother, the biological mother's husband under certain circumstances, or an adoptive parent. It also includes the child's biological father if he "has been adjudicated to be the legal

father of a child by any court or administrative body of this state or any other state or territory or foreign country." Tenn. Code Ann. § 36-1-102(28)(D).

*In re S.M.F.*, 2004 WL 2804892, at *6.

The Department argues that the less stringent standards of Tenn. Code Ann. § 36-1-113(g)(9) apply to R.W.L. because he is H.A.L.'s biological father but not her legal father. The trial court, however, made specific note of R.W.L.'s testimony that he had earlier been granted legal custody of H.A.L., but then, for some reason, discounted this testimony even though the Department presented no evidence to rebut it.

We disagree with the trial court's conclusion that the Department had proved by clear and convincing evidence that R.W.L. was not H.A.L.'s legal father. The Department bore the burden of proving by clear and convincing evidence that R.W.L. was not H.A.L.'s legal father. Tenn. Code Ann. § 36-1-113(c)(1). After R.W.L. testified that he had taken steps to become H.A.L.'s legal parent, the burden of disproving his testimony shifted to the Department. However, the Department offered no proof that R.W.L. is not H.A.L.'s legal parent.[15] Therefore, the juvenile court erred by terminating R.W.L.'s parental rights under Tenn. Code Ann. § 36-1-113(g)(9).

## VI.
### H.A.L.'S BEST INTERESTS

Having found more than one ground for terminating R.W.L.'s parental rights, the juvenile court next turned to the question of H.A.L.'s best interests.[16] The factors to be considered during the individualized "best interests" decision-making are included in Tenn. Code Ann. § 36-1-113(i). As we have stated, "[t]he listed factors are not exhaustive. The statute does not require every factor to appear before a court can find that termination is in a child's best interest." *State of TN Dept. of Children's Svcs. v. T.S.W.*, No. M2001-01735-COA-R3-CV, 2002 WL 970434, at *3 (Tenn. Ct. App. May 10, 2002) (No Tenn. R. App. P. 11 application filed). When the interests of the child and the parent's diverge, the best interests of the child will always prevail. Tenn. Code Ann. § 36-1-101(d) (2001).

The juvenile court noted that R.W.L. continually abused drugs, committed crimes, and was caught up in a revolving door between prison and the free world. The court also noted that R.W.L. admitted that he had not seen his daughter for seven years and that he and his daughter no longer knew each other and had no sort of meaningful relationship. The court further found that R.W.L.

---

[15]While we would normally expect that litigants would provide courts with the details of their prior legal proceedings, oftentimes they simply do not have the ability or the resources to provide such information. The Department easily could have ascertained what proceedings involving H.A.L., if any, had occurred in the courts of Rutherford County and then supplied the juvenile court with this information.

[16]*See* Tenn. Code Ann. § 36-1-113(c)(2).

-12-

had offered no proof that he would lead a stable life and provide a stable home for H.A.L. after his release from prison. The court also observed that R.W.L. had knowingly failed to protect H.A.L. from sexual abuse. The court therefore concluded that it was in H.A.L.'s best interests that R.W.L.'s parental rights be terminated.

While we agree with the trial court's findings regarding most of these factors, we disagree with the trial court's conclusion that R.W.L. knowingly failed to protect H.A.L. from sexual abuse. R.W.L. testified that he had no knowledge of the sexual abuse inflicted upon H.A.L. by her aunt and uncle. In addition, he was incarcerated when this abuse occurred. The Department offered no proof to contradict R.W.L.'s testimony as to his lack of knowledge of the abuse. However, even after discounting the juvenile court's reference to R.W.L.'s failure to protect, the record demonstrates clearly and convincingly that H.A.L.'s interests will be best served by terminating R.W.L.'s parental rights.

**VII.**

We affirm the juvenile court's September 28, 2004 judgment terminating R.W.L.'s parental rights with regard to H.A.L. and remand this case to the juvenile court for further proceedings consistent with this opinion. We tax the costs of this appeal to the Tennessee Department of Children's Services.

_____
WILLIAM C. KOCH, JR., P.J., M.S.